# CLEARFIELD TRUST CO. ET AL. *v.* UNITED STATES.

No. 490.   Argued February 5, 1943.—Decided March 1, 1943.

*Mr. Roswell Dean Pine, Jr.,* submitted for petitioners.

*Mr. Paul A. Freund,* with whom *Solicitor General Fahy, Assistant Attorney General Shea,* and *Mr. Paul A. Sweeney* were on the brief, for the United States.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

On April 28, 1936, a check was drawn on the Treasurer of the United States through the Federal Reserve Bank of Philadelphia to the order of Clair A. Barner in the amount of $24.20. It was dated at Harrisburg, Pennsylvania, and was drawn for services rendered by Barner to the Works Progress Administration. The check was placed in the mail addressed to Barner at his address in Mackeyville, Pa. Barner never received the check. Some unknown person obtained it in a mysterious manner and presented it to the J. C. Penney Co. store in Clearfield, Pa., representing that he was the payee and identifying himself to the satisfaction of the employees of J. C. Penney

Co. He endorsed the check in the name of Barner and transferred it to J. C. Penney Co. in exchange for cash and merchandise. Barner never authorized the endorsement nor participated in the proceeds of the check. J. C. Penney Co. endorsed the check over to the Clearfield Trust Co. which accepted it as agent for the purpose of collection and endorsed it as follows: "Pay to the order of Federal Reserve Bank of Philadelphia, Prior Endorsements Guaranteed." [1] Clearfield Trust Co. collected the check from the United States through the Federal Reserve Bank of Philadelphia and paid the full amount thereof to J. C. Penney Co. Neither the Clearfield Trust Co. nor J. C. Penney Co. had any knowledge or suspicion of the forgery. Each acted in good faith. On or before May 10, 1936, Barner advised the timekeeper and the foreman of the W. P. A. project on which he was employed that he had not received the check in question. This information was duly communicated to other agents of the United States and on November 30, 1936, Barner executed an affidavit alleging that the endorsement of his name on the check was a forgery. No notice was given the Clearfield Trust Co. or J. C. Penney Co. of the forgery until January 12, 1937, at which time the Clearfield Trust Co. was notified. The first notice received by Clearfield Trust Co. that the United States was asking reimbursement was on August 31, 1937.

This suit was instituted in 1939 by the United States against the Clearfield Trust Co., the jurisdiction of the federal District Court being invoked pursuant to the provisions of § 24 (1) of the Judicial Code, 28 U. S. C. § 41 (1). The cause of action was based on the express guaranty of prior endorsements made by the Clearfield Trust Co.

---

[1] Guarantee of all prior indorsements on presentment for payment of such a check to Federal Reserve banks or member bank depositories is required by Treasury Regulations. 31 Code of Federal Regulations § 102.32, § 202.33.

J. C. Penney Co. intervened as a defendant. The case was heard on complaint, answer and stipulation of facts. The District Court held that the rights of the parties were to be determined by the law of Pennsylvania and that since the United States unreasonably delayed in giving notice of the forgery to the Clearfield Trust Co., it was barred from recovery under the rule of *Market Street Title & Trust Co.* v. *Chelten Trust Co.,* 296 Pa. 230, 145 A. 848. It accordingly dismissed the complaint. On appeal the Circuit Court of Appeals reversed. 130 F. 2d 93. The case is here on a petition for a writ of certiorari which we granted because of the importance of the problems raised and the conflict between the decision below and *Security-First Nat. Bank* v. *United States,* 103 F. 2d 188, from the Ninth Circuit.

We agree with the Circuit Court of Appeals that the rule of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. This check was issued for services performed under the Federal Emergency Relief Act of 1935, 49 Stat. 115. The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state. Cf. *Board of Commissioners* v. *United States,* 308 U. S. 343; *Royal Indemnity Co.* v. *United States,* 313 U. S. 289. The duties imposed upon the United States and the rights acquired by it as a result of the issuance find their roots in the same federal sources.[2] Cf. *Deitrick* v. *Greaney,* 309 U. S. 190;

---

[2] Various Treasury Regulations govern the payment and endorsement of government checks and warrants and the reimbursement of the Treasurer of the United States by Federal Reserve banks and member bank depositories on payment of checks or warrants bearing

*D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.,*
315 U. S. 447. In absence of an applicable Act of Congress
it is for the federal courts to fashion the governing rule
of law according to their own standards. *United States* v.
*Guaranty Trust Co.,* 293 U. S. 340, is not opposed to this
result. That case was concerned with a conflict of laws
rule as to the title acquired by a transferee in Yugoslavia
under a forged endorsement. Since the payee's address
was Yugoslavia, the check had "something of the quality
of a foreign bill" and the law of Yugoslavia was applied to
determine what title the transferee acquired.

In our choice of the applicable federal rule we have oc-
casionally selected state law. See *Royal Indemnity Co.*
v. *United States, supra.* But reasons which may make
state law at times the appropriate federal rule are sin-
gularly inappropriate here. The issuance of commercial
paper by the United States is on a vast scale and trans-
actions in that paper from issuance to payment will com-
monly occur in several states. The application of state
law, even without the conflict of laws rules of the forum,
would subject the rights and duties of the United States to
exceptional uncertainty. It would lead to great diver-
sity in results by making identical transactions subject to
the vagaries of the laws of the several states. The de-
sirability of a uniform rule is plain. And while the fed-
eral law merchant, developed for about a century under
the regime of *Swift* v. *Tyson,* 16 Pet. 1, represented gen-
eral commercial law rather than a choice of a federal rule
designed to protect a federal right, it nevertheless stands
as a convenient source of reference for fashioning federal
rules applicable to these federal questions.

*United States* v. *National Exchange Bank,* 214 U. S.
302, falls in that category. The Court held that the United

---

a forged endorsement. See 31 Code of Federal Regulations §§ 202.0,
202.32–202.34. Forgery of the check was an offense against the United
States. Criminal Code § 148, 18 U. S. C. § 262.

States could recover as drawee from one who presented for payment a pension check on which the name of the payee had been forged, in spite of a protracted delay on the part of the United States in giving notice of the forgery. The Court followed *Leather Manufacturers Bank* v. *Merchants Bank,* 128 U. S. 26, which held that the right of the drawee against one who presented a check with a forged endorsement of the payee's name accrued at the date of payment and was not dependent on notice or demand. The theory of the *National Exchange Bank* case is that he who presents a check for payment warrants that he has title to it and the right to receive payment.[3] If he has acquired the check through a forged endorsement, the warranty is breached at the time the check is cashed. See *Manufacturers Trust Co.* v. *Harriman National Bank Trust Co.,* 146 Misc. 551, 262 N. Y. S. 482; *Bergman* v. *Avenue State Bank,* 284 Ill. App. 516, 1 N. E. 2d 432. The theory of the warranty has been challenged. Ames, *The Doctrine of Price* v. *Neal,* 4 Harv. L. Rev., 297, 301–302. It has been urged that "the right to recover is a quasi contractual right, resting upon the doctrine that one who confers a benefit in misreliance upon a right or duty is entitled to restitution." Woodward, Quasi Contracts (1913) § 80; *First National Bank* v. *City National Bank,* 182 Mass. 130, 134, 65 N. E. 24. But whatever theory is taken, we adhere to the conclusion of the *National Exchange Bank* case that the drawee's right to recover accrues when the payment is

---

[3] We need not determine whether the guarantee of prior endorsements adds to the drawee's rights. See Brannan's Negotiable Instruments Law (6th ed.) pp. 330–331, 816–817; *First National Bank* v. *City National Bank,* 182 Mass. 130, 134, 65 N. E. 24. Cf. *Home Ins. Co.* v. *Mercantile Trust Co.,* 219 Mo. App. 645, 284 S. W. 834. Under the theory of the *National Exchange Bank* case, the warranty of the title of him who presents the check for payment would be implied in any event. See *Philadelphia National Bank* v. *Fulton National Bank,* 25 F. 2d 995, 997.

made. There is no other barrier to the maintenance of the cause of action. The theory of the drawee's responsibility where the drawer's signature is forged (*Price* v. *Neal*, 3 Burr. 1354; *United States* v. *Chase National Bank*, 252 U. S. 485) is inapplicable here. The drawee, whether it be the United States or another, is not chargeable with the knowledge of the signature of the payee. *United States* v. *National Exchange Bank, supra*, p. 317; *State* v. *Broadway National Bank*, 153 Tenn. 113.

The *National Exchange Bank* case went no further than to hold that prompt notice of the discovery of the forgery was not a condition precedent to suit. It did not reach the question whether lack of prompt notice might be a defense. We think it may. If it is shown that the drawee on learning of the forgery did not give prompt notice of it and that damage resulted, recovery by the drawee is barred. See *Ladd & Tilton Bank* v. *United States*, 30 F. 2d 334; *United States* v. *National Rockland Bank*, 35 F. Supp. 912; *United States* v. *National City Bank*, 28 F. Supp. 144. The fact that the drawee is the United States and the laches those of its employees are not material. *Cooke* v. *United States*, 91 U. S. 389, 398. The United States as drawee of commercial paper stands in no different light than any other drawee. As stated in *United States* v. *National Exchange Bank*, 270 U. S. 527, 534, "The United States does business on business terms." It is not excepted from the general rules governing the rights and duties of drawees "by the largeness of its dealings and its having to employ agents to do what if done by a principal in person would leave no room for doubt." *Id.*, p. 535. But the damage occasioned by the delay must be established and not left to conjecture. Cases such as *Market St. Title & Trust Co.* v. *Chelten Trust Co., supra*, place the burden on the drawee of giving prompt notice of the forgery—injury to the defendant being presumed by the mere fact of delay. See *London & River Plate*

*Bank* v. *Bank of Liverpool,* [1896] 1 Q. B. 7. But we do not think that he who accepts a forged signature of a payee deserves that preferred treatment. It is his neglect or error in accepting the forger's signature which occasions the loss. See *Bank of Commerce* v. *Union Bank,* 3 N. Y. 230, 236. He should be allowed to shift that loss to the drawee only on a clear showing that the drawee's delay in notifying him of the forgery caused him damage. See Woodward, Quasi Contracts (1913) § 25. No such damage has been shown by Clearfield Trust Co. who so far as appears can still recover from J. C. Penney Co. The only showing on the part of the latter is contained in the stipulation to the effect that if a check cashed for a customer is returned unpaid or for reclamation a short time after the date on which it is cashed, the employees can often locate the person who cashed it. It is further stipulated that when J. C. Penney Co. was notified of the forgery in the present case none of its employees was able to remember anything about the transaction or check in question. The inference is that the more prompt the notice the more likely the detection of the forger. But that falls short of a showing that the delay caused a manifest loss. *Third National Bank* v. *Merchants' National Bank,* 76 Hun 475, 27 N. Y. S. 1070. It is but another way of saying that mere delay is enough.

*Affirmed.*

MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE did not participate in the consideration or decision of this case.