## UNITED STATES v. GUY W. CAPPS, Inc.
### Civ. No. 1238.

United States District Court
E. D. Of Virginia.
Sept. 7, 1951.

William B. Eley, Asst. U. S. Atty., Norfolk, Va. (George R. Humrickhouse, U. S. Atty., Richmond, Va.), Joseph Kovner, Department of Justice, Washington, D. C., for plaintiff.

Willard R. Ashburn, Norfolk, Va., for defendant.

BRYAN, District Judge.

In December, 1948, the defendant purchased some 48,000 sacks of Irish potatoes from a Canadian exporter for shipment to the United States, and included in its contract, so as to comply with a Canadian embargo on table potatoes imposed by agreement with the United States, a statement that the potatoes were "for planting in Florida and Georgia"; but, further avers the complaint, after the importation early in 1949 the defendant breached its contract, to the injury of the United States, by selling the potatoes for table stock purposes, and thus forced the Government in its support program [1] of agricultural commodities to buy an equivalent quantity of table potatoes at an outlay of $150,486, the sum in which it now seeks damages of the defendant importer.

By motion to dismiss the defendant urges the invalidity of the international agreement, denies the statement to be of any obligatory force, denies any right in the Government to sue, and holds the damages to be no more than theoretical.

A month before the shipment, through an exchange of diplomatic notes, Canada had covenanted with the United States that, in view of the disjointing effect which the unrestrained export of potatoes from Canada to the United States would have

1. Agricultural Act of 1948, Public Law 897, 80th Congress, 62 Stat. 1247.

**32**

upon the price support of potatoes by the United States, she would withhold export permits for the movement of table stock potatoes to the United States, and would allow export of seed potatoes on purchase by a United States importer only on condition that the contract of purchase include an assurance *by the importer* that the potatoes would not be diverted or reconsigned for table stock purposes.

 Though not a treaty, the United States-Canada agreement nevertheless had the force of law. It was an Executive Agreement.[2] Long has it been recognized that the President through his Secretary of State or other representative may, without the authorization or approval of the Congress, enter into commercial compacts.[3] Even assuming that it could do so, the Congress did not, as the defendant argues, by the Agricultural Act of 1948[4] or by the Tariff Act of 1930,[5] as amended, curtail this reach of Executive authority.

True, the first of these Acts continued price support into 1949, and explicitly directed how the President might limit the entry of farm produce when he believed their import was injuring the support plan. Likewise the Tariff Act outlines the method for formulating international trade agreements to reduce imports. The present agreement conforms to neither prescription. However, their terms disclose that each of these Acts purposed only a control of the Executive's stewardship of the Congressional power to regulate foreign commerce, which had been delegated through those Acts to the President. In them is found no design to rein the President's international bargaining powers. Moreover, when the Congress in adopting a program invests the President with means to protect it, he is not thereby ousted of any ex officio prerogative also adapt-

able to preserve the program. His power remains independently, though complementary and coordinate with the legislative scheme.[6]

We conclude too that, on the pleadings, the statement in the purchase contract is in effect an assurance by the defendant against diversion of the seed potatoes. The complaint avers the defendant's awareness of the trade-agreement at the time of his purchase. Except to raise the embargo, there was no call for the clause "Certified seed potatoes loaded on SS Gangway are for planting in Florida and Georgia" in the contract. In these environs the words clearly mean that the potatoes would be used for seed only, and as a subscriber or acceptor of the contract, the defendant vouched that declaration as its promise. "Florida and Georgia" were added in obedience to the trade agreement's exaction that export permits issue only for specified States.

 Undoubtedly the United States has the right to sue on this promise. The Government is the direct and lone beneficiary of the pledge against diversion. Inclusion of the promise in the contract advantaged the exporter and importer—by lifting the embargo—but the promise intrinsically benefited only the United States. Indeed, in reality it ran to the United States. The factum of the promise advantaged both the consignor and consignee; its performance would profit neither. Of a surety, the immediate parties foresaw the United States as alone enforcing the undertaking. From this it plainly follows, too, that Federal law governs in determining whether a non-party beneficiary may sue on the promise.[7] With its operation favoring the United States only, and with its performance possible there only, the promise was obviously intended by the par-

---

2. United States v. Pink, 315 U.S. 203, 229, 62 S.Ct. 552, 86 L.Ed. 796.

3. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L. Ed. 255; United States v. Belmont, 301 U.S. 324, 330, 57 S.Ct. 758, 81 L.Ed. 1134.

4. Public Law 897, 80th Congress, 62 Stat. 1247.

5. 19 U.S.C.A. § 1351 et seq.

6. Note the discussion of the parallel exercise of authority in United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319–320, 57 S.Ct. 216, 81 L.Ed. 255.

7. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838.

ties to be enforced under Federal law, which accords the beneficiary a right of action.[8]

As to damages, the Court believes that the claim in the complaint will sustain a trial of that issue, should liability be proved.

Denial of the motion will be ordered.

8. Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721, 749;

In re Wolf Mfg. Industries, 7 Cir., 56 F.2d 64, 67.