Per Curiam :
Plaintiff Merchants National Bank & Trust Company of Indianapolis (“Merchants”) asserts a claim against the United States based on the following allegations: *345 L. L. Hawhee and Sons, Inc. (“Hawhee”), an Indiana corporation, delivered to Merchants, in September 1968, a security agreement granting the bank a security interest in the company’s accounts receivable, inventory and contract rights and their proceeds; Hawhee also agreed to maintain, as collateral security, a special collateral account with the bank and to hold in trust for Merchants all described remittances until deposit in the collateral account, and Merchants could use such deposited proceeds at its discretion to discharge Hawhee’s indebtedness to the bank. This security interest was perfected on September 16, 1968, by appropriate filing of a financing statement with the Secretary of State of Indiana. In derogation of this security agreement, Hawhee opened, in June 1969, an account with another bank in Indianapolis and deposited there certain remittances from accounts receivable which should have been deposited with Merchants. Hawhee then drew checks on this other account, in the amount of some $28,812.96, paying past due federal taxes owed by Hawhee to the Federal Government. Merchants has been unable to collect its full indebtedness from Hawhee and the diversion of this sum of $28,812.96 resulted in a loss to Merchants which it seeks to recoup from the defendant. A claim was filed (in November 1969) with the Internal Revenue Service but was disallowed in April 1911.
Defendant 'has moved to dismiss the petition on the ground that it fails to state a claim upon which relief can be granted. The Government’s position is that it is a holder in due course of the checks drawn upon its debtor’s (Hawhee’s) other bank account, and plaintiff’s security interest in Hawhee’s accounts receivable cannot defeat the Government’s rights as such holder in due course. We think that the Government is plainly right.[1]
Presumably federal law governs,[2] and the controlling federal rules would derive from the Uniform Commercial *346 Code which applies throughout the country and is invoked by both parties; in any event, Indiana has adopted the U.C.C. without change (in the relevant parts).
Under § 9-306 of the U.C.C., a perfected security 'interest does not attach to a check drawn upon proceeds in the debtor’s bank account (which are otherwise secured) if the check is given to a holder in due course, at least if the check is given in the ordinary course of the debtor’s business.
This is made clear by Comment 2 (c):
(c) Where cash proceeds are covered into the debtor’s checking account and paid out in the operation of the debtor’s business, recipients of the ¡funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party ■from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.
There is, of course, no contention here of fraud or collusion by the Federal Government, and it is clear that payment to the Government of Hawhee’s past due Federal Insurance Contributions Act (F.I.C.A.) and withholding taxes is “in the operation of the debtor’s [Hawhee’s] business” and “in ordinary course.”
It is also indisputable that the United States was a holder in due course under § 3-302 of the U.C.C. The payment of a debt is expressly declared to be “for value”, § 3-303 (b) ,[3] and the perfection of plaintiff’s security interest by the filing of the financing statement with the Indiana Secretary of State “does not of itself constitute notice” under the U.C.C. “to a person who would otherwise be a holder in due course.” §3-304(5). See §9-309; 2 W. D. Hawkland, A Transactional Guide to the Uniform Commercial Code 725 *347 (1964).[4] Moreover, tbe Government, even if it bad official notice that Hawhee was a fiduciary with respect to plaintiff, cannot be held also to have had notice that Hawhee was acting improperly. See §3-304(2), 304(4) (e). Comment 5 to § 3-304 declares that “mere notice of the existence of the fiduciary relation is not enough in itself to prevent the holder from taking in due course, and he is free to take the instrument on the assumption that the fiduciary is acting properly.” Even if the Government were chargeable with knowing the full terms of the security agreement, there was nothing to give it notice that Hawhee had breached its duty to plaintiff; creditors of Hawhee, like the defendant, could well believe that one of the prime purposes of the arrangement between plaintiff and Hawhee was to enable the latter to pay its proper business obligations.[5] Eecipients of routine checks in due and normal course of business are not required to make searching inquiries in depth, before accepting payment.
Plaintiff is not entitled to recover on the allegations of its petition, and the defendant’s motion to dismiss is granted. The petition is dismissed.

 We Rave not considered It necessary to have oral argument.

 Cf. D’Oench, Duhme & Co. v. Federal Deposit Ins. Co., 315 U.S. 447 (1942) ; Clearfield Trust Co. v. United States, 318 U.S. 363 (1943) ; United States v. Allegheny County, 322 U.S. 174, 182-83 (1944) ; United States v. Yazell, 382 U.S. 341, 347-48, 352-54 (1966).

 Plaintiff erroneously invokes §1-201(9), which defines a “buyer in ordinary course of business” to exclude “a transfer in bulk or as security for or In total or partial satisfaction of a money debt.” In tbe situation here, the Government was not a “buyer” of “goods” at all — the only subject covered by this particular definition.

 "* * * the doctrine of constructive notice does not prevent one from becoming a holder in due course, and, therefore, filing a security agreement or financing statement will not protect the secured party with regard to negotiable proceeds.”

 The fact that the check was drawn on a bank other than plaintiff would not be notice. There would be no way of knowing whether plaintiff had consented to the opening of the other account, or whether the monies in that separate account were of the type in which plaintiff had a security interest.