**RETAIL, WHOLESALE & DEPARTMENT STORE UNION, LOCAL 343**

v.

**Dr. John T. DUNLOP, as Director of the Cost of Living Council and the Great Atlantic & Pacific Tea Company, Inc.**

**Civ. A. No. C 74–848 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 16, 1975.

Frederick W. Cory, Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for plaintiff.

William C. White, Chester W. Kitchins, Jr., Dept. of Justice, Washington, D. C., for Dunlop.

Scott F. Zimmerman, Robert L. Potter, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for A&P.

## ORDER

JAMES C. HILL, District Judge.

This action is before the Court on cross-motions for summary judgment. Presented for review is the March 8, 1974 Decision and Order of the Cost of Living Council (COLC) which is attacked by plaintiff as not being consistent with the findings of fact made by the COLC. Jurisdiction to review an award of the COLC is granted the Court pursuant to Section 211 of the Economic Stabilization Act of 1970 as amended (the Act), 12 U.S.C. § 1904 note.

## I.

Plaintiff, Retail, Wholesale and Department Store Union, Local 343 (Local 343), represents approximately 199 hourly-rated warehouse employees in Atlanta, Georgia, employed by defendant The Great Atlantic & Pacific Tea Co., Inc. (A&P). As such, Local 343 was classified under the Act as a category III unit of employees, which applied to units with less than 1,000 employees.

During late summer and early fall of 1971 plaintiff and A&P were engaged in bargaining as to the terms of a new contract between them. On August 15, 1971 President Nixon imposed by Executive Order No. 11615, 36 F.R. 15727, a freeze (Phase I) upon wages in an effort to stem the then mounting tide of inflation. Phase I of the President's economic plan terminated on November 14, 1971 and was superseded by Phase II which allowed for certain pay and price increases subject to regulations promulgated by the Pay Board under the authority of the Act. With respect to collective bargaining agreements entered into and effective during Phase II, category III pay adjustments required the prior approval of the Pay Board when the request for wage increases exceeded 5.5 percent.

On December 12, 1971, plaintiff entered into a collective bargaining agreement with defendant A&P effective October 31, 1971 through October 28, 1973, which provided for hourly wage increases effective November 14, 1971 and December 17, 1972. The hourly wage increases effective November 14, 1971, as provided in the contract, amounted to approximately a 21.5 percent increase, exceeding the general wage and salary standard of 5.5 percent. Accordingly, on December 22, 1971 the plaintiff applied for an exception with the Internal Revenue Service District Office in Atlanta for the wage increases scheduled to be effective November 14, 1971. The basis stated for the exception was the general wage comparability between Local 343 and units of employees at three of A&P's competitors, Colonial Stores, Kro-

ger Company, and Alterman Brothers. The contracts between A&P's competitors and their employees, relied on by plaintiff, were negotiated in September, 1970, prior to the imposition of wage controls.

On March 20, 1972 A&P submitted a Form PB–1 to the IRS District Office in response to Local 343's request for exception, and requested guidance on the amount of the negotiated increase which could be implemented. A&P subsequently submitted a Form S–61, Request for Exception.

On April 7, 1972, the IRS notified the plaintiff that its pay adjustment exception request did not meet the requirements for exception under tandem relationships (6 C.F.R. 201.11(a)(1), recodified at 6 C.F.R. 201.12), essential employees (6 C.F.R. 201.11(a)(2), recodified at 6 C.F.R. 201.14), or for other serious hardship or gross inequity, and therefore was denied. On April 18, 1972, the IRS notified A&P that its request was denied because it failed to qualify for exception under tandem relationships, essential employees, or otherwise for serious hardship or gross inequity.

On April 17, 1972, plaintiff appealed the denial of the exception request with the IRS District Office. The grounds for appeal stated that not to allow a tandem relationship merely because the subject contract and those contracts of the employee units of A&P's competitors in the area had not been executed within six months of each other was arbitrary; furthermore, plaintiff contended that it was entitled to the wage increases under 6 C.F.R. 201.11(d), based on the historical comparability of wage rates between A&P and its competitors. Copies of contracts for A&P, Colonial Stores, Kroger Company, and Alterman Brothers covering the period 1964 through December, 1973, were enclosed with the appeal.

On May 3, 1972, the IRS District Office denied the appeal but allowed an additional .2 percent over the 5.5 percent standard, based on the exception providing for catch-up increases (6 C.F.R. 201.-11(a)(3)), providing for a total increase

effective as of November 14, 1971 of 5.7 percent.

On May 15, 1972, plaintiff appealed the IRS decision to the Pay Board on the basis of its contention of general wage comparability to employees of A&P's competitors.

Based on the recommendations of the Category III Panel, on December 7, 1972, the Pay Board approved a 7 percent wage increase effective November 14, 1971. The decision affirmed the finding that there existed no tandem relationship but granted the 7 percent increase on the basis of the criteria set forth under section 201.11(d). The Pay Board decision found that the plaintiff's contract was the lead contract in the area, and to grant a greater increase than approved would lead to an inflationary spiral.

On December 20, 1972, plaintiff requested further review of the Pay Board's decision. Plaintiff argued that the finding of the December 7, 1972 decision of the Pay Board that the contract between plaintiff and A&P was the lead contract in the area was erroneous. Plaintiff reiterated its contention of general wage comparability and argued that if the plaintiff's wage increases effective November 14, 1971 were not granted to the full extent of the 21.5 percent increase requested, while the 1971 pay adjustments for A&P's competitors were already in effect, then A&P would enjoy windfall profits in contravention of the intent of section 201.11(d).

On January 8, 1973 A&P advised the Pay Board that it did not agree with plaintiff's request for further review.

The request for review was subsequently referred to the Food Industry Wage and Salary Committee of the COLC, successor to the Pay Board. On July 26, 1973, the COLC issued an Interim Decision and Order. The Interim Decision found that pay adjustments were pursuant to a new contract and that upon consideration of the evidence, including facts relating to the "wage and salary relationship" between Local 343 and employees in similar employee units in Atlanta, the equitable position of the employees involved within the meaning of 6 C.F.R. 201.30 (successor to 6 C.F.R. 201.11(d)) warranted an exception to permit pay adjustments scheduled to be effective November 14, 1971 to be implemented in full as of December 12, 1972, and for the full payment of contract rates effective after December 12, 1972 in accordance with the terms of the contract. The effect of the Interim Decision was to limit to 7 percent the wage increase for the period November 14, 1971 through December 12, 1972, thus denying the full amount of the 21.5 percent increase retroactive to November 14, 1971.

On August 13, 1973, plaintiff selected an Option 2 hearing in its request for further review of the Interim Decision and Order. Plaintiff contended that not to allow the negotiated wage increases effective November 14, 1971, as per the terms of the contract, to be implemented until December 12, 1972 was arbitrary and capricious, violative of section 201.30 of the regulations, and created gross inequities to be suffered by the employees of Local 343. Plaintiff renewed its argument that the effect of the Interim Decision in denying the grant of exception for the 21.5 percent wage increases retroactive to November 14, 1971 was to allow A&P to enjoy windfall profits.

On October 3, 1973 the Cost of Living Council forwarded a questionnaire to plaintiff. Plaintiff submitted a detailed response to the COLC questionnaire by letter dated November 21, 1973.

On December 10, 1973 a hearing was held before staff members of the Cost of Living Council at which time representatives of plaintiff and A&P were afforded the opportunity to present evidence and arguments in support of their respective positions.

On March 8, 1974, the Administrator for Pay Board Matters issued a final Decision and Order affirming the July 26, 1973 Interim Decision, and denying any further relief.

## II.

Section 211(d) of the Act limits the scope of judicial review of an order of an economic stabilization agency to whether it was issued pursuant to its delegated authority and whether the order had a rational basis supported by substantial evidence. Section 211(d) provides in part:

. . . no order of such agency shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.

In addition to the standards set out in Section 211, the Temporary Emergency Court of Appeals has indicated that "[n]otwithstanding the general exclusion by Section 207 of stabilization functions from the operation of the Administrative Procedure Act with certain exceptions primarily relating to the issuance of regulations, the power of the court to correct arbitrary action is implicit in Section 211(d)(1)." *Associated General Contractors of America, Inc. v. Laborers International Union of North America,* 476 F.2d 1388, 1400, fn. 20 (Emer.Ct.App. 1973).

Plaintiff's attack upon the COLC order is that it meets neither the Act's test that, in order to be sustained, it must be found to be ". . . based upon findings which are . . . supported by substantial evidence," nor the test implied by the Temporary Emergency Court of Appeals that the agency decision must not amount to arbitrary action.

It should also be pointed out that this review is limited to the Order and Decision of the COLC entered on March 8, 1974. This decision is based upon the interim ruling of July 26, 1973 in which the COLC found:

4. Upon consideration of the evidence with respect to this case, including facts relating to the wage and salary relationship between employees in the employee unit and employees in simi-lar employee units in the Atlanta area, it is found that the equitable position of the employees involved within the meaning of Section 201.30 of the Economic Stabilization Regulations is such that an exception should be granted sufficient to permit payment of the following pay adjustments:

a. Pay adjustments scheduled to be effective November 14, 1971 may be implemented in full effective on and after December 12, 1972 . . . . .

The Court will thus limit its inquiry to whether or not plaintiffs are entitled as a matter of law to an "equitable position" exception. Although other exceptions were considered and rejected by the administrative agencies in earlier rulings, the decision presently under attack is solely based upon the "equitable position" exception of Section 211.30. This is the only action reviewable.

The Court also notes that the request for review in this action is peculiar. Plaintiff is not attacking the findings of fact made by the COLC, but rather, it is attacking the fact that the relief granted was not consistent with the findings of fact. The Court has not found any cases which attack an administrative decision in such a manner.

The Court is confronted with a novel situation and must devise its own proper approach to it.

The findings of fact by COLC are not satisfactory. The agency's broad finding that the area historical wage relationship necessitated the "equitable position" exception was clearly within its powers and duties and is supported by the record. It appears to the Court that its ultimate conclusion that, to give proper effect to such exception in this particular case the pay raise effective date should be delayed until December 12, 1972 was well within the range of proper conclusion *from the evidence.* Yet, the agency made no findings of fact upon which it concluded that delayed effectiveness was appropriate.

In providing for proper treatment of the "equitable position" exception, the

agency might have concluded that most, but not all, of the contracted raise should be allowed from the contracted effective date; i. e., November 14, 1971. It might have concluded, as it did, that the entire raise should be allowed, but effective at a later date. Had it found preponderance as urged by the plaintiff, it might have concluded that all of the raise should be allowed as of its contract date. The Court knows what it concluded. The Court does not know the specific facts that it found to exist upon which it so concluded.

In the function of reviewing administrative decisions, there is a relatively simple duty upon the Court in such a situation. The Court remands the matter to the fact finder, the agency, for more complete findings of fact. That duty is an opportunity. The Court does not have to review the record; speculate on available findings; and determine whether or not there were available findings upon which the ultimate conclusion might properly have been based. Instead, the Court, by remand, asks, "What facts did you find? When you tell the Court, then it can be determined whether or not they were lawfully available and whether or not, upon *those* findings, the ultimate conclusion was lawful."

But that cannot be done here. The agency,—the fact finder,—is no more. It has disappeared. It does not exist and it cannot be reassembled. As with Morley, COLC is dead. The Court does not have even the afterthought of an affidavit as was furnished in *Plumbers Local Union No. 519 v. Construction Industry Stabilization Committee,* 479 F.2d 1052 (Emer.Ct.App.1973). Furthermore, there is no way to compel one.

■ There is, therefore, no established procedure, by statute, precedent, or cus-

tom to deal with the matter.[1] The Court apprehends, therefore, that it is the duty of the judge to cast about the law; determine whether or not there is established practice for dealing with a closely analogous situation; determine if the purpose of the present proceeding will be served by similar treatment; and, if so, devise and apply a similar approach to this case. *Cf. Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Ault v. Harris,* 317 F.Supp. 373 (D.Alaska, 1968), *aff'd.* 432 F.2d 441, 9th Cir.

To do so, we leave the narrow field of judicial review of administrative action and explore the judicial process broadly. Our search is to find out whether or not there is established procedure for reviewing the ultimate conclusions of a fact finding body when the fact finding body ceases to exist upon rendering its ultimate decision.

To ask the question illuminates its answer. That may well be the best established procedure known to the law. The duty of finding the facts is traditionally put upon a jury. It is not put upon jurors; it is put upon a certain, selected, number of jurors associated together and designated as a jury.

Yet, in the entire court system there does not exist, as permanent personnel, a single juror or a single jury. The jury is, perhaps, the most temporary body known to the law. It is created when its members are sworn; it continues in existence until it has rendered its final verdict in one case (absent consolidations for trial); and, having done so it ceases to exist. The same people may meet together if they choose to do so, but it is not a jury.[2]

Jury verdicts are regularly reviewed. Post trial motions to the trial court are regularly received. Appeals to appellate

---

1. The Court has quickly and sternly resisted the fleeting temptation to issue an order of remand and leave it to our Clerk to handle the quandry in his usual efficient manner!

2. The writer recalls a much publicized case in Georgia where those who sat on the jury did

meet after the verdict and issued a press release to explain their action. Thus, those people sought to supplement their verdict with "findings of fact." Yet it could not seriously be contended that such a post verdict get-together was a jury or that the press release was any part of official action by a jury.

tribunals contest the validity of the jury's verdict. Yet in only the rare case are there recorded any findings of fact by that fact-finding body. (Juries are not infrequently given special verdict questions which reveal specific findings of fact. Occasionally inconsistent verdicts as to several parties are returned from which it can be divined that facts were found inconsistent with ultimate conclusions.) See, e. g., *Southern Railway v. Harbin,* 135 Ga. 122, 68 S.E. 1103 (1910).

So it may be said that there is a well established standard for the review of decisions of fact finding bodies no longer in existence at the time of review. Cryptically, it is to determine whether or not, under any view of the evidence, the conclusion reached by the finder of fact was authorized. If so, the verdict is upheld. If not, it is set aside.

In administrative work, our fact finders remain in esse and are available to explain their verdict. Therefore it is provided that they shall usually "return" their answers to "special interrogatories" in all instances as findings of fact. When it is determined that one has not sufficiently performed that duty, the matter is sent back for more definite findings. The law providing for such remand obviously contemplates that the fact finding body will be still in existence to respond. (It seems a reasonable assumption. Once established, these agencies seldom disappear.) It is also reasonable to conclude that the Congress anticipated that standards of review of jury verdicts would be ample to the unlikely review of the "verdict" of an administrative body that, like a jury, has for all time ceased to exist. It might be said that the remand procedure is the exception to the general rule. It only applies when, and because, the fact finder is still in existence, available for that purpose. In all other situations, review shall be the same; i. e., whether or not the final decision is based upon any evidence.

 The Court concludes that the general rule of review must apply here.

The record reveals ample evidence upon which the finder of fact could conclude that allowing the full contract increase but deferring its commencement until December 12, 1972 would best effectuate the equities in the equitable position exception.

Therefore plaintiff's motion for summary judgment is denied.

Defendants' motions for summary judgment are granted.