**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a National Banking Association, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

No. 75–3346.

United States Court of Appeals, Ninth Circuit.

April 18, 1977.

Harris B. Taylor, Joan G. Lamb, Los Angeles, Cal., argued, for defendant-appellant.

Philip S. Malinsky, Asst. U. S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee.

Before CLARK,* Associate Justice, and CHAMBERS and ELY, Circuit Judges.

Mr. Justice CLARK:

The Bank of American National Savings and Trust Association appeals from a judg-

---

ment for $15,327.44 entered against it by the District Court in favor of the United States and covering fifteen of the latter's drafts fraudulently issued by an unknown person or persons working at the United States Air Corps Station Disbursing Office at El Toro, California. The swindle was accomplished by forging military pay orders, records and drafts in favor of non-existent servicemen and cashing them at the Bank, which later presented them for payment to the Treasurer of the United States on the Bank's endorsement (exceptions) of "prior endorsements guaranteed." The Bank claims that the imposter rule enunciated in *United States v. Bank of America N.T. and S.A.*, 274 F.2d 366 (9th Cir. 1959), and *Atlantic National Bank of Jacksonville v. United States*, 250 F.2d 114 (5th Cir. 1957) is controlling and that, therefore, it is not liable. We agree and reverse the judgment.[1]

1. Julius Caesar followed the rule, "While in Rome, do as the Romans do", and when I sit on circuit, I do as that Circuit does. Judge Chambers, later Chief Judge, in writing *United States v. Bank of America N.T. and S.A., supra*, observed that:

> In a certain sense, all forgers are imposters, and, similarly, imposters in connection with commercial paper in a broad sense are usually forgers. At 367.

He went on to hold that where one prepared "phony" income tax returns in the names of fictitious employees and submitted to the Treasury along with them corresponding "phony" income tax withholding [W–2] forms; and subsequently received refund checks in the name of the fictitious employees from the Treasury; and endorsed the checks in the names of the

---

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.), sitting by designation.

1. The result we reach here is the same that would necessarily be reached by application of the Uniform Commercial Code, now in effect in all fifty states. Unfortunately, the UCC has not yet been adopted for federal application by Congress, and the federal courts thus face the disturbing prospect of reaching on the same set of facts, different conclusions through the use of common law principles from that of states governed by the UCC in commercial litigation.

The commercial interests of our country would be better served if interested parties could expect uniformity in the federal and state courts' application of commercial law. To this end, we would urge Congress to adopt, in the not distant future, the UCC for federal application, as our fifty states have already done for local application.

fictitious employees at a bank, the latter was not liable to the Government on its stamp of "prior endorsements guaranteed" placed on the back of the checks. In short, despite the fact that twixt forgers and imposters the difference is very small, the bank gets stuck on the former but gets off on the latter.

2. The Government claims, however, that the situation here is a padded payroll one and cites another Ninth Circuit case, *United States v. Bank of America N.T. and S.A.*, 438 F.2d 1213 (1971), *cert. den.*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108, as controlling. There, however, the fraudulent scheme, rather than employing the use of fictitious names, utilized the name of a discharged shipmate, obtained the latter's identification card and substituted his own thereon. After preparing and presenting the Treasury checks, payable to the discharged seaman, they were signed by the Disbursing Officer. The checks were cashed on the forged endorsement of the discharged seaman, and the bank was held liable on its guarantee. The case went off on the forging, not the padded payroll. Nor is *United States v. City National Bank & Trust Co.*, 491 F.2d 851 (8th Cir. 1974) apposite. There the disability checks paid to a retired soldier continued to be sent to him by the Government after his death, the Government not knowing of the same. The common law wife admitted forging the deceased soldier's name to the checks and cashing them. The Bank claimed its endorsement was of no consequence since the Uniform Commercial Code now adopted by all fifty states was controlling and precluded recovery by the United States on forgery claims. However, Judge Heaney found *National Metropolitan Bank v. United States*, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945) controlling. The latter case held that the rights and liabilities on commercial paper issued by the United States were to be determined by federal law, not the Uniform Commercial Code. A civilian clerk in the Paymaster's Office of the Marine Corps procured the issuance of 144 Government checks "by forging pay and travel mileage vouchers in the names of living Marine Corps officers." These forgeries were recoverable from the Bank, the Court held. Another case, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), cited by the Court in *National Metropolitan Bank, supra*, was likewise a forgery case in which the Government check was mailed to the payee but obtained by some unknown person who presented it to J. C. Penney Co. The company cashed it on the endorsement of the unknown person in the name of the payee. Finally, *Washington Loan and Trust Co. v. United States*, 77 U.S.App.D.C. 284, 134 F.2d 59 (1943) covered a large number of Government checks issued by the Chief of the Voucher Unit of the Accounts Section of the National Park Service. He made up fraudulent payroll vouchers for fictitious or non-existent employees of an imaginary C.C.C. camp in Shenandoah National Park. The case went off on a section of the D.C.Code, 1940, and the transactions were dealt with as forgeries. The case would have no precedential value here, not only because it was decided on the D.C.Code but also since it antedated *National Metropolitan Bank, supra* (1945).

3. It appears to us that this case comes squarely within the factual circumstances of Judge Chambers' opinion. It is true that there the scheme was an outside job while this one was perpetrated by Government employees, but that is a distinction without difference. The facts are similar to *Atlantic National Bank of Jacksonville v. United States*, 250 F.2d 114 (5th Cir. 1957), except for that one circumstance. There the scheme was an inside job on the Internal Revenue Service; the drafts were made payable to non-existent payees and were endorsed in their names by the employee perpetrating the scheme; the banks where they were negotiated placed their "Prior Endorsement Guaranteed" stamp on the drafts and collected the face of the same from the Government. The Fifth Circuit decided the case against the Government, stating:

In the process of fashioning a federal jurisprudence concerning the Govern-

ment's own commercial paper [citation omitted] this Court . . . along with many others, has adopted the "imposter rule." Under it, when the drawer or issuer of a check intends that it shall go to the person falsely pretending to be another who is in fact nonexistent, the endorsement in the fictitious payee's name by the pretender is not a forgery and an endorser bank is not liable to the drawee-drawer on the traditional stamped endorsement "all prior endorsements guaranteed." At 116.

The judgment is therefore

Reversed.