In re David Keith BUBERT and Wife Donna Lu Rathman Bubert, Debtors.

**SMALL BUSINESS ADMINISTRATION, Appellant,**

v.

**David Keith BUBERT and Donna Lu Rathman Bubert, Appellees.**

**Civ. A. No. W–84–CA–182.**

United States District Court, W.D. Texas, Waco Division.

April 3, 1986.

John B. McNamara, Waco, Tex., for appellant.

Larry E. Kelly, Waco, Tex., for appellees.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

Appellant Small Business Administration ("The SBA"), appeals from the judgment of discharge given by the Bankruptcy Court to the Debtors-Appellees, David and Donna Lu Bubert. Bankruptcy Judge Bert Thompson entered an Order on August 24, 1984, which found that a 198-acre tract of rural property owned by the Debtors was exempt pursuant to 11 U.S.C. § 522, and that, according to Texas law, the SBA's lien on the homestead was void. This Order was entered with a Memorandum Opinion and was taken after the SBA entered objections and after full adversary proceedings. Having thoroughly examined the record presented in this appeal, the briefs of counsel filed in this cause and the controlling legal authorities, this Court is of the opinion that the Bankruptcy Court's judgment is well-founded in law, fact, and equity.

Accordingly, it is affirmed.

### I.

By a note dated January 12, 1981, the SBA loaned to the Debtors $92,700.00 as a business disaster loan. To secure this loan, the Debtors executed a deed of trust on their farmland to the SBA. The Debtors subsequently filed for bankruptcy and claimed their 198-acre farm to be exempt pursuant to 11 U.S.C. § 522(b)(2) and the homestead provision of the Texas Constitution and Texas state statutes. They also objected to the SBA's position that the deed of trust provided secured creditor status.

Paragraph 16 of the Deed of Trust securing the loan from the SBA contains the following agreement:

> In compliance with Section 101.1(d) of the Rules and Regulations of the Small Business Administration [13 C.F.R. 101.1(d)], this instrument is to be construed and enforced in accordance with applicable Federal law.

The promissory note contains a similar provision.

The regulation referred to, 13 C.F.R. 101.1(d), provides as follows:

(1) Loans made by SBA are authorized and executed pursuant to Federal programs adopted by Congress to achieve national purposes of the U.S. Government.

(2) Instruments evidencing a loan, obligation of security interest in real or personal property payable to or held by the Administration or the Administrator, such as promissory notes, bonds, guaranty agreements, mortgages, *deeds of trust,* and other evidences of debt or security *shall be construed and enforced in accordance with applicable Federal law.*

.    .    .    .    .

(4) Any person, corporation, or organization that applies for and receives any benefit or assistance from SBA, or that offers any assurance or security upon which SBA relies for the granting of such benefit or assistance, shall *not be entitled to claim* or assert any *local immunity* to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.

(13 C.F.R. 101.1(d))    (Emphasis added.)

Based on this agreement, the SBA has objected to the exemption of this 198-acre tract of land under the homestead provisions of Texas Law. The objection was overruled, and the SBA has appealed to this Court citing five points of error. The SBA concedes, however, that if Texas homestead law does apply, the ruling of the Bankruptcy Court is correct. Since this Court is of the opinion that the Texas homestead law was correctly applied to this case, there is no need to address the SBA's points of error individually.

## II.

Both parties agree that the "choice of law" provision of 13 C.F.R. 101.1(d) as incorporated in the deed of trust requires the application of "federal law" and not "Texas law". The agreement ends, however, when the question of "What is the federal law?" is reached.

## A. *Exemption of Homestead from Bankruptcy Estate*

The SBA first asserts that the trust deed provision and the referenced federal regulation prevent the Debtors from claiming their homestead to be exempt from the bankruptcy estate. Its counsel contends that since 13 C.F.R. 101.1(d)(4) prevents the Debtors from claiming or asserting any "local immunity" to defeat the obligation owed to the SBA, the Debtors are precluded from claiming their homestead as exempt. With this position, this Court cannot agree.

Within the context of the bankruptcy estate, the homestead exemption acquires a special meaning distinct from its meaning in state law. The debtor's petition for bankruptcy creates an "estate" in which is vested all of his legal and equitable interests in property. 11 U.S.C. § 541. Some of these property interests may be reclaimed by the debtor from the bankruptcy estate as "exemptions", 11 U.S.C. § 522(b). Congress has allowed the debtor to choose whether to claim "exemptions" under the federal statutory scheme, or to choose the "exemptions" as they are granted by the laws of the debtor's home state. 11 U.S.C. § 522(b)(2).

Generally, state law exempts certain essential properties from sale by foreclosure or execution under state law procedures. In bankruptcy, these properties can acquire the *additional federal* protection of being exempt from a bankruptcy liquidation sale by the bankruptcy trustee, if the debtor so chooses.

But it is federal bankruptcy, statutory law that cloaks them with this additional protection. If the Debtors in this case had not chosen the state exemptions as their bankruptcy exemptions, the Texas homestead exemption would have been completely ineffective to stop the inclusion of the Debtors' farm in the bankruptcy estate. It would have been subject to sale as an estate asset.

So, just as it is federal bankruptcy law that determines what property goes into

the estate, 11 U.S.C. § 542, it is federal bankruptcy law that determines what property can be taken out of the estate as exemptions, 11 U.S.C. § 522. For these reasons, the SBA's contention that the application of federal law would preclude the Debtors from exempting their homestead is not well-taken, and that part of the Bankruptcy Court's order will be affirmed.

### B. *Proof of Secured Status*

The SBA's appeal is more strongly supported in the Bankruptcy Court's failure to accord it secured status with respect to the trust deed on the Debtor's farm. 11 U.S.C. § 502 provides, in pertinent part:

>  (a) A claim or interest ... is deemed allowed, unless a party in interest ... objects.
>  (b) ... [I]f such objection to a claim is made, the Court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim ..., except to the extent that—
>  (1) such claim is *unenforceable* against the debtor and property of the debtor, *under any agreement or applicable law* for a reason other than because such claim is contingent or unmatured.
>  (Emphasis added.)

The SBA claimed its loan to the Debtors was secured by the deed of trust on the farm and the Debtors duly objected. The Bankruptcy Court, applying Texas homestead law, held that, due to the fact of homestead by the Debtors on the farm property, the deed of trust to the SBA never created a valid security interest in the property, and therefore, the SBA was denied status as a secured creditor. The SBA urges that the Bankruptcy Court applied the wrong law in determining the validity of the trust deed.

Bankruptcy Code Section 502(b)(1) provides only that the validity of the SBA's security interest is to be determined by "applicable law." Because of the intensely local nature of property rights, the validity and legality of claims is usually determined in light of applicable state law. 3 *Collier on Bankruptcy* § 502.02 at 502–27, 28 (15th ed. 1985). Dealings with the SBA, however, must be excepted from this general rule because of the federal nature of its program, *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), and because of the specific federal regulation requiring the application of federal law, 13 C.F.R. 101.1(d). To this point, the parties agree. The dispute centers around the content of federal law, i.e., the underlying rule of decision.

The Supreme Court has stated that "[i]n absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." *Kimbell Foods* at 726, 99 S.Ct. at 1457 (quoting from *Clearfield Trust Company v. United States*, 318 U.S. 363, 366–367, 63 S.Ct. 573, 574–575, 87 L.Ed. 838 (1943).).

The SBA asserts that 13 C.F.R. 101.-1(d)(4) is the applicable "Act of Congress." The history of the promulgation of this regulation and the cases applying it, however, do not bear out this position. 13 C.F.R. 101.1(d) was promulgated in response to the Supreme Court's decision in *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). *See United States v. Gish*, 559 F.2d 572, 574 (9th Cir.1977). In *Yazell*, the Court applied Texas law of coverture to defeat an SBA claim similar to the present claim and over the SBA's appeal that federal law, and not state law, should apply. The *Yazell* Court framed this issue as follows:

>  The issue is whether the Federal Government may voluntarily and deliberately make a negotiated contract with knowledge of the limited capacity and liability of the persons with whom it contracts, and thereafter, insist, in disregard of such limitation, upon collecting (a) despite state law to the contrary relating to family property and liabilities, and (b) in the absence of federal statute, regulation or even any contract provision indicating that the state law would be disregarded. (382 U.S. at 350, 86 S.Ct. at 506.)

As a response to the *Yazell* decision, the limited impact of 13 C.F.R. 101.1(d) is that state law *will* be disregarded. It goes no further. It negates the binding effect of state law to the issue at hand, but it does not purport to fill the vacuum thus created as a positive federal rule of decision. *United States v. Willis*, 593 F.2d 247, 252, fn. 6, (6th Cir.1979).

13 C.F.R. 101.1(d) is not the "Act of Congress" referred to in *Kimbell Foods*, and it, therefore, poses no restriction on this Court in choosing the applicable rule of decision. No other federal law has been advanced as the controlling authority for the disposition of this case, nor has any such authority been found by this Court. Homestead exemption is traditionally a subject of state law. In deciding whether to adopt state law or to fashion a nationwide federal rule, the decision in *Kimbell Foods* requires this Court to consider the following factors: 1) whether the SBA is a federal program which by its nature requires nationwide uniformity, 2) whether adopting the state law would frustrate the specific objections of the SBA, and 3) whether applying a federal rule would disrupt commercial relations predicated on state law. 440 U.S. at 728–729, 99 S.Ct. at 1458–1459.

On the issue of uniformity, the SBA again points to 13 C.F.R. 101.1(d) as evidencing the government's interest in uniformity of law. Certainly, the effectiveness and the efficiency of the SBA would be enhanced by a uniform homestead exemption law. For instance, SBA loan officers would then not need to familiarize themselves with the laws of each state in which they deal. But these considerations alone fail to establish that the SBA "by its nature" *requires* national uniformity. Other courts considering this question have refused to find such a need for uniformity. *See id.* at 733, 99 S.Ct. at 1461; *United States v. Lattauzio*, 748 F.2d 559, 562 (10th Cir.1984); *United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir.1978).

With respect to the issue of whether the adoption of state law will frustrate the objections of the SBA, the SBA makes a stronger showing. Texas homestead law prevents the mortgaging of homestead property except for purchase money, improvement liens, or taxes. Texas Const. art. XVI, § 50. Additionally, a lienholder is powerless to enforce a waiver or disclaimer of the homestead exception given by the property owner. 43 Texas Jur.3d, Homesteads § 71 *et seq.* In the present case, the SBA appears to have relied upon a local tax affidavit designating only 1.39 acres of the 198-acre farm as their homestead. Still, because of the open use of the full acreage by the Debtors, Texas law allows them to claim it all as homestead regardless of any assertion to the contrary. *Id.* § 137, n. 11. These points serve to illustrate the powerful effect of the Texas homestead exemption. While most states offer a homestead exemption of some kind, 40 Am.Jur.2d, Homestead § 76 *et seq.*, few, if any, offer such extreme protection.

The SBA argues that unless a uniform federal rule is adopted, the assistance program for which the SBA was established cannot be maintained in a fair and equal manner throughout the United States. Because of the inability to secure their loans with real property, small farm owners in Texas will be unable to secure and receive assistance loans from the SBA. On the other hand, the same farmer located in a state that allows the waiver of the homestead exemption, or that has no homestead exemption at all, would be able to pledge his farm as security for the SBA's relief loan.

In this way, counsel for the SBA asserts, the application of state law would frustrate the objective of the SBA to tender disaster loans to needy farmers in a fair and equal manner. This point is well-taken. The existence of divergent and debtor-oriented state homestead laws creates problems in administration of the SBA's program which would not be present if a federal rule refusing to recognize homestead exemption were adopted. However, this point must be tempered with the following provision of the SBA's regulation on disaster loans:

The Small Business Act contains no specific requirement with respect to collateral as security for disaster or economic injury loans, nor has SBA established any rigid rules in regard to collateral. Generally, SBA will not decline a loan where the applicant does not have any fixed amount of collateral available to pledge if there is reasonable assurance of repayment. However, SBA may require applicants to pledge whatever collateral is available, and refusal to pledge such collateral may be the reasons for declining a loan.

(13 C.F.R. § 123.11.)

So while the application of Texas homestead law might reduce the amount of security available for an SBA loan, it would not put the loan completely out of the reach of a farmer who could otherwise reasonably assure repayment. Problems with administration would remain, but this Court does not believe that the SBA's objectives would be completely frustrated.

The third factor considered is whether fashioning a federal rule would disrupt commercial relations predicated on state law. Consideration of this factor weighs heavily in favor of applying state law. The laws of property and, more specifically, homestead laws are devised almost completely from the constitutions, statutes, and common law of the several states. There is no federal law of homestead. As noted previously, the homestead rights given vary widely from state to state. Some states have no homestead exemption at all. Other states, like Texas, consider the exemption an inalienable constitutional right. Texas Const. art. XVI, § 50; *see also* Kansas Const. art. 15, § 9; Florida Const. art. 10, § 4[a]. The granting or denial of a homestead exemption by a state is a matter involving the balancing of many competing interests by the state's government. By its laws, the State may attempt to encourage new families to settle in the state, or it may alternatively encourage the introduction of new capital from financial institutions. The correct balance of these factors must necessarily differ from state to state.

In addition to the importance state homestead laws may play from a public policy standpoint, this Court must consider the stability that is provided by having state law as the sole source of homestead law. Financial institutions, homeowners, and contractors rely heavily on this stability in allocating risk in their commercial transactions. To inject an overriding federal law into these commercial transactions for the benefit of the SBA would undermine this stability to the detriment of all involved (except perhaps the SBA).

■ This analysis brings the Court to the conclusion that federal law in this area should adopt the homestead laws of the Debtor's state of residence, Texas in this instance, as the rule of decision. As conceded by the Appellant, the application of this body of law as the correct rule of decision voids the trust deed given by the Debtors to the SBA and leaves the SBA an unsecured creditor. This was the ruling of the Bankruptcy Court and that ruling will be affirmed. This Court recognizes the inequities between SBA borrowers created by the application of the state law-based rule of decision for the homestead exemption. Congress, however, is much better equipped to weigh the competing interests involved in fashioning a federal rule. Until Congress acts in this area, the more prudent course is to adopt the ready made body of state law.

### III.

The Bankruptcy Court correctly applied the Bankruptcy Code and the provisions of Texas homestead law to grant the Debtors' homestead exemption and to deny the SBA's security interest in the homestead. Accordingly, the order of the Bankruptcy Court is AFFIRMED.