**UNITED STATES of America**

v.

**PHILADELPHIA NATIONAL BANK.**

**Civ. A. No. 42554.**

United States District Court
E. D. Pennsylvania.

Oct. 16, 1969.

Louis C. Bechtle, U. S. Atty., Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

William T. Campbell, Swartz, & Detweiler, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

Before us are motions of both the plaintiff and the defendant for summary judgment. Both have stipulated to the relevant facts, which are as follows: From September 10, 1963, until March 19, 1964, one Esther D. Graham was an employee of the United States Naval Air Development Center at Johnsville, Pennsylvania. During this time she submitted to the Dispersing Officer of the Center numerous false travel vouchers made out in the names of true persons employed by the Government at the Center. In due course, United States Treasury checks were forwarded to Mrs. Graham naming as payees the persons in whose name Mrs. Graham had submitted the Travel Vouchers. Instead of forwarding these checks to the named payees, Mrs. Graham forged an endorsement in the name of the payees, cashed them and converted the proceeds to her own use. In due course checks were received by the defendant, Philadelphia National Bank and were presented to the Government for payment. These checks, which had been endorsed by the bank, totaled $3,831.66. When the Government dis-

covered the fraud, it demanded a refund from the bank, which refused payment. Thereafter the Government recovered $2,601.03 from Mrs. Graham, so that their present demand from the bank is $1,230.63.

■ It is clear and acknowledged by both parties that under the Uniform Commercial Code in its present form [1] this is a "padded payroll case" and the loss, if the plaintiff were not the Government, would fall on the employer whose agent presented the padded payroll. UCC § 3–405(1) (c) However, the Supreme Court held in Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) that pursuant to the federal currency powers, legal questions involved in controversies over federal commercial paper are to be resolved by the application of federal common law rather than state law, and that in the absence of an applicable Act of Congress, federal courts must fashion the governing rules themselves. Subsequent decisions of the Supreme Court in National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945) and the District of Columbia Circuit in Washington Loan and Trust Company v. United States, 77 U.S.App.D.C. 284, 134 F.2d 59 (1943) have held in situations very close to the instant one that the loss must fall on the bank rather than the Government. The Court in *National Metropolitan Bank* explicitly stated at 323 U.S. 459, 65 S.Ct. 356:

"We do hold that negligence of a drawer-drawee in failing to discover fraud prior to a guaranty of the genuineness of prior endorsements does not absolve the guarantor from liability in cases where the prior endorsements have been forged."

The defendant contends, however, that since the Uniform Commercial Code has been revised to include the padded payroll cases, and since nearly all the states have adopted the Code, we should in the interests of uniformity adopt that rule for federal paper as well.

Although in viewing the case before us as a matter of first impression we might possibly have reached a different conclusion, we agree with the court's conclusion in the very similar case of United States v. Bank of America National Trust and Savings Association, 288 F. Supp. 343 (N.D.Calif.1968) that:

"* * * this Court is also mindful of its role as an inferior court and of the possible conflicts which would be created among the various Circuits if it accepted defendant's argument, which would have a profound effect on the uniformity desired in this particular area. While there may be some doubt as to the actual reasons for the Supreme Court's rejection of defendant's basic theories in the *Clearfield* and *Metropolitan Bank* cases, only today's Supreme Court can give us the answer and at the same time preserve the uniformity which has existed since *Clearfield*." 288 F.Supp. at 348.

We also find convincing the Court's other reasons, namely, that the rationale of *Clearfield* was not uniformity but "preservation of the federal right" and that the Government is distinguishable from a commercial bank in that it operates less profitably, finds it more difficult to insure against such losses, and

---

1. See Reviser's Comment No. 4 of § 3–405 to the most recent revision of the Code, which states that:

"Paragraph (c) is new. It extends the rule of the original Subsection 9(3) to include the padded payroll cases, where the drawer's agent or employee prepares the check for signature or otherwise furnishes the signing officer with the name of the payee. The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee."

may in many cases have difficulty in exercising the control over its employees that private enterprise does.

The defendant also contends that this case is not one of forgery but falls within the "Imposter Rule" adopted by at least two circuits since Clearfield. See United States v. Bank of America National Trust and Savings Association, 274 F.2d 366 (9th Cir. 1959); Atlantic National Bank of Jacksonville v. United States, 250 F.2d 114 (5th Cir. 1957). To the contrary, we think that this is more like a forgery than an imposter situation because it is not markedly different from the case where a check intended for a real employee is stolen and the endorsement of that employee forged. As the Court said in the *Bank of America* case, "[t]he essence of legal forgery is that the maker-drawer intended to obligate himself to a definite living person called A." 274 F.2d 369. Such is the case here.

## ORDER

And now, this 16th day of October, 1969, it is ordered that the plaintiff's motion for summary judgment is granted and the Clerk is directed to enter judgment in favor of the Government in the amount of $1,230.63.