**UNITED STATES of America,
Appellee,**

v.

**BANK OF AMERICA NATIONAL
TRUST AND SAVINGS ASSO-
CIATION, Appellant.**

**No. 23630.**

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1971.

Theodore Sachsman (argued), Charles E. Cooper, Robert H. Fabian, San Francisco, Cal., for appellant.

Leonard Scheitman (argued), Atty., Dept. of Justice, L. Patrick Gray, III, Asst. Atty. Gen., William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., James L. Browning, San Francisco, Cal., for appellee.

Before HAMLEY and ELY, Circuit Judges, and TAYLOR, District Judge.*

PER CURIAM:

The appellant bank cashed six Treasury checks and thereafter warranted the endorsements, presented the checks to the Treasury through the Federal Reserve Bank, and received payment on each of the checks from the Government. The Government subsequently sued the bank to recover the payments and prevailed. The bank appeals.

The issuance of the checks resulted from a fraudulent scheme on the part of the third-party defendants. These two men were enlisted personnel of the United States Navy, attached to the USS Coral Sea and performing duties in the vessel's Disbursing Office. They knew of a shipmate who had recently been discharged from the Navy. One of them obtained the dischargee's identification card and substituted his own photograph thereon. The two schemers then prepared and presented the Treasury checks, payable to the discharged man, to the ship's Disbursing Officer. He signed the checks, and the defrauding seamen, forging the name of the payee and using the false identification card, were able to cash the checks at the bank.

The District Court rested its judgment upon National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945), and we have concluded that we have no choice except to do the same.

The question, of course, is whether the recited circumstances present a situation of legal forgery in the sense that the bank should be required to assume the loss. Under the common law as it existed in 1945, when *Metropolitan* was decided, the question should have been, and was, answered in the affirmative. Since 1945, however, every state in the

---

* Honorable Fred M. Taylor, United States Disrtict Judge, Boise, Idaho, sitting by designation.

# 1214

union, except Louisiana,[1] has adopted the Uniform Commercial Code. Under that Code, the endorsement of a payee's name by a third party is not a legal forgery in the sense with which we are concerned if an employee of a check's drawer has supplied the drawer with the name of the payee while intending, at the same time, that the payee shall have no interest in the check. Uniform Commercial Code § 3-405(1) (c). The reason for the rule apparently is that the drawer, rather than a nonnegligent bank, should bear the responsibility for faithlessness on the part of its own employees or agents.

Thus, the bank, forcefully and effectively, argues that one of the principal foundations for the Supreme Court's decision in *Metropolitan* has now been undermined. It strengthens this argument by pointing to Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), wherein at 369, 63 S.Ct. at 576, the Supreme Court reapplied the expression contained in United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 46 S.Ct. 388, 70 L.Ed. 717 (1926):

" 'The United States does business on business terms.' It is not excepted from the general rules governing the rights and duties of drawees 'by the largeness of its dealings and its having to employ agents to do what if done by a principal in person would leave no room for doubt.' "

All the above notwithstanding, we cannot find that the Supreme Court has itself, since 1945, written anything which might cause us to conclude with reasonable assurance that its *Metropolitan* decision is no longer viable. This being so, we think that *Metropolitan* must now control the disposition of this appeal.

Affirmed.

---

1. Louisiana has adopted an amended version of section 9 of the Uniform Negotiable Instruments Act so that its law, on the issue in question, now coincides with that of the remaining forty-nine states.