UNITED STATES of America,
Appellee,

v.

CITY NATIONAL BANK & TRUST
CO., Appellant.

No. 73–1015.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Jan. 21, 1974.

Ann M. Whittier, Kansas City, Mo., for appellant.

Robert Mandel, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

City National Bank and Trust Company appeals from a judgment of the United States District Court for the Western District of Missouri. It contends that the trial court erred in holding that the United States was entitled to indemnification for checks paid by the United States upon presentment by the Bank

with prior endorsements guaranteed. The decision of the trial court is reported at 349 F.Supp. 1188 (W.D.Mo.1972).

The following facts are undisputed. Fletcher Davis, a retired soldier, received disability payments from the United States commencing on November 30, 1946. He died February 27, 1954, in the Veteran's Administration Hospital in Wadsworth, Kansas. Notice of his death was given to the Central Office of the Veteran's Administration in Washington, D. C., on March 5, 1954. Application for burial allowance was made to the Veteran's Administration and an award was made. No notice of Davis'· death, however, was given to the Department of the Army Financial Center, Retired Pay Division, either by the Veteran's Administration or Davis' family, nor was the Retired Pay Division otherwise informed of Davis' death.

After his death, the Department of Army continued to issue Treasury checks payable to Fletcher Davis. Each of these checks was cashed at the Grand Avenue Bank by Georgia Mae Davis, Davis' "common-law" wife. Mrs. Davis later admitted to endorsing Fletcher Davis' name on the checks.

The Grand Avenue Bank endorsed the checks to the City National Bank and Trust Company which, in turn, presented the checks to the United States Treasury Department for payment. Both banks guaranteed all prior endorsements on each check.

On February 16, 1967, the Veteran's Administration received, by an anonymous telephone call, information that Davis was dead and that Georgia Mae Davis was cashing the Treasury checks. After investigation, this information was communicated to the Department of the Army, Retired Pay Division, on March 10, 1967. On April 20, 1967, the Treasury was requested to stop payment on the checks. The Treasurer thereupon made three sets of reclamation demands upon City National. When the demands were not honored, the United States brought an action against City National[1] to recover $16,413, the amount of seventy-two pension checks submitted by City National to the government in the previous six years with guarantees of prior endorsements.[2]

The District Court entered judgment in favor of the United States. It held that National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945), controlled and that under its teachings, the negligence of the United States in failing to discover fraud prior to the guarantee of the genuineness of prior endorsements did not absolve City National from ·liability where the prior endorsements had been forged. It alternatively held that the United States was entitled to recover on the warranty implied in federal law, see, e. g., United States v. Bank of America National T. & S. Ass'n, 288 F.Supp. 343 (N.D.Cal.1968), aff'd, 438 F.2d 1213 (9th Cir.), cert. denied, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971), and on the warranty required by a Treasury regulation, 31 C.F.R. § 360.4 (1967).[3]

1. City National then brought a third-party action against Grand Avenue Bank, the depositary bank. That action was dismissed when Grand Avenue Bank agreed to indemnify City National if it lost the case.

2. 31 U.S.C. § 129 bars recovery for forged or altered checks submitted to the Treasurer more than six years before demands for reclamation.

3. That regulation provides:
    The presenting bank and the indorsers of a check presented to the Treasurer for payment are deemed to guarantee to the Treasurer that all prior indorsements are genuine, whether or not an express guar-

anty is placed on the check. When the first indorsement has been made by one other than the payee personally, the presenting bank and the indorsers are deemed to guarantee to the Treasurer, in addition to other warranties, that the person who so indorsed had unqualified capacity and authority to indorse the check in behalf of the payee.
31 C.F.R. § 360.4 (1967).
    We note, however, that this regulation was not in effect when the checks were paid. A similar regulation was in effect during this period.
    (a) Banks presenting checks payable in Washington, D. C., direct to the Treasur-

City National contends on appeal that: (1) *National Metropolitan Bank* is no longer controlling; (2) the Uniform Commercial Code has now been adopted by forty-nine of the fifty states and should be looked to as the "new national law of commerce;" and (3) the Code, particularly § 3–406,[4] precludes the United States from asserting the forgery as its negligence substantially contributed to the making of the unauthorized signatures.[5]

■■ We cannot agree that § 3–406 of the Code is determinative of the rights of the parties in this case. National Metropolitan Bank v. United States, *supra* 323 U.S. at 458, 65 S.Ct. 354, and Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943), require a contrary result. Both of these cases noted that

Treasury regulations govern the payment and endorsement of government checks.[6] These regulations require a party presenting a Treasury check to the government to guarantee that all prior endorsements on the check are genuine, and they grant the Treasurer the right to demand a refund if that guarantee is breached.[7] The regulations are largely decisive in determining the relationships between City National and the government and supplant other sources of legal standards. *Cf.*, Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L. Ed.2d 180 (1962); United States v. Shimer, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

■ There remains the question of whether the government should be es-

er of the United States, under special arrangements with the Treasurer, shall be deemed to guarantee all prior indorsements including that of the drawer when the check is drawn in the drawer's favor irrespective of whether a specific guaranty is incorporated in the bank's indorsement. 31 C.F.R. § 202.27(a) (1946).

4. Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.
Uniform Commercial Code § 3–406.

5. In the light of our holding, we need not determine whether the United States was negligent; and if so, whether that negligence substantially contributed to the making of the unauthorized signatures. *Compare*, Anna C. Bagby, *etc.*, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Commerce Bank of Kansas City v. Traders National Bank, et al., 491 F.2d 192 (8th Cir. 1974).

6. *But cf.*, Note, Clearfield: Clouded Field of Federal Commercial Law, 53 Colum.L.Rev. 991, 1004 (1953).

7. 31 C.F.R. § 202.27(b), (c) and (d) provides:
(b) Return will be made to the presenting bank of any check on which payment

is refused, in which case the bank will make refund before the close of the next business day to the Treasurer of the United States, and if refund is not made by the bank the Treasurer of the United States is authorized to deduct the amount of the check from any amount that is due or may become due to the bank. If the check is required for use in connection with a criminal investigation or legal proceeding, it will be retained for that purpose and a photographic copy of the face and back will be furnished to the presenting bank.

(c) In the event that any check which has been paid by the Treasurer is subsequently found to bear a forged indorsement, or to bear any other material defect or alteration which was not discovered upon payment by the Treasurer, a photographic copy of the check will be forwarded to the presenting bank with request for refund.

(d) In cases of checks raised or bearing a forged signature of the drawer not discovered upon payment by the Treasurer, and in other cases where the Treasurer's right to reclaim is in question, the check will be forwarded to the presenting bank with a request for refund or collection, if possible. A photographic copy may be returned in lieu of the check if the latter is required for use in connection with a criminal investigation or legal proceeding.

topped from enforcing the Treasury regulation here because of its negligence in issuing checks to a deceased payee. City National urges that we engraft such an exception to the regulation. It cites United States v. First Nat. Bank of Chicago, 138 F.2d 681 (7th Cir. 1943), and United States v. National Rockland Bank, 35 F.Supp. 912 (D.Mass.1940), in support of its position. These cases do support City National's contention that the government should be estopped by its negligence, but their validity was seriously weakened—if not destroyed—by the Supreme Court in National Metropolitan Bank. Certiorari was explicitly granted there to resolve the conflict between First National and Washington Loan and Trust Co. v. United States, 77 U.S.App.D.C. 284, 134 F.2d 59 (D.C.Cir. 1943), and the Supreme Court resolved the conflict by taking a position contrary to that taken by the Seventh Circuit in United States v. First Nat. Bank of Chicago, *supra*.

We are not persuaded that the authority of *National Metropolitan Bank*, with respect to the problem discussed here, has been eroded by the passage of time or the adoption of the U.C.C. by forty-nine states. *See*, United States v. Bank of America National T. & S. Ass'n, *supra* 438 F.2d at 1214. The Court there stated:

> * * * [W]e cannot find that the Supreme Court has itself, since 1945, written anything which might cause us to conclude with reasonable assurance that its *Metropolitan* decision is no longer viable. This being so, we think that *Metropolitan* must now control the disposition of this appeal.

*See also*, United States v. National Bank of Com. in New Orleans, 438 F.2d 809 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 64, 30 L.Ed.2d 57 (1971), United States v. Philadelphia National Bank, 304 F.Supp. 955 (E.D.Pa.1969).

▪ We accept the general proposition that the federal government, in its commercial transactions, should be treated as other business entities, *see*, United

States v. First National Bank in Ogallala, Neb., 470 F.2d 944 (8th Cir. 1973), but we cannot extend such treatment here in the light of the Treasury regulations and the decision of the Supreme Court in *National Metropolitan Bank*. If a change is desired, Congress can enact a new statute, the Treasury regulations can be revised or the Supreme Court can overrule *National Metropolitan Bank*.

We affirm.