**ALNOR CHECK CASHING**

v.

**Jeff KATZ and Solar Research Corporation, et al.**

Civ. A. No. 93–424.

United States District Court, E.D. Pennsylvania.

March 12, 1993.

Memorandum Denying Reconsideration April 23, 1993.

Geoffrey B. Gompers, Geoffrey B. Gompers, P.C., Philadelphia, PA, for plaintiff.

Alan A. Turner, Turner & McDonald, P.C., Norman E. Greenspan, Steven M. Schain, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for defendants.

Richard Mentzinger, Jr., Office of the U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Civil Div., Philadelphia, PA, for U.S.

### MEMORANDUM AND FINAL JUDGMENT

HUTTON, District Judge.

Presently before the Court is third-party defendant United States of America's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) and plaintiff Alnor Check Cashing Company's ("Alnor") response.

### I. FACTS AND PROCEDURAL DEVELOPMENTS

**A. The Underlying Financial Transactions**

The material facts are not in dispute. On November 29, 1991, the United States Treasury issued Treasurer's Check Number 3007–7994192 in the amount of $9,390.90. The check identified the payee as:

Pay to
the Order of SOLAR RESEARCH CORP
ATTN JEFF KATZ
230 SOUTH BROAD STREET
PHILADELPHIA, PA 19102

(Alnor Exhibit C, photocopy of check and Government's Exhibit A). On December 19, 1991, Jeff Katz ("Katz") presented the check to Alnor for negotiation of the check to cash.

Alnor is a check cashing company. Katz represented to Alnor that he was a corporate officer of Solar Research Corporation ("Solar Research") and that he had the authority to cash the check.

Alnor cashed the check and gave Katz the cash value of the check less Alnor's customary service fee. Alnor subsequently endorsed the check over to its bank, the Philadelphia Savings Fund Society ("PSFS"). On September 23, 1992, PSFS issued a notice to Alnor that it was debiting Alnor's account in the amount of $9,390.90 and that PSFS was issuing a check no. 2372912, for the same amount, to the United States Federal Reserve Bank. (Alnor Exhibit G). PSFS explained that the transfer from Alnor's account to the Federal Reserve was because of a "forged endorsement." *Id.*

Although Solar Research does not indicate the actual date, there is no dispute that prior to September 23, 1992, the Treasury was notified that Jeff Katz no longer had the authority to negotiate treasury notes for Solar. (Alnor Exhibit C, Solar's undated request for new Treasury Check based on Katz's cashing Treasury Check No. 3007–7994192).

### B. *Litigation in State Court and the Government's Subsequent Removal to Federal Court*

On November 4, 1992, Alnor filed suit against Solar Research and Katz in the Court of Common Pleas of Philadelphia County. Alnor's complaint alleges that Solar Research and Katz violated Pennsylvania's version of the Uniform Commercial Code ("U.C.C.") on negotiable instruments. 13 Pa. Con.Stat. §§ 3302–05 (U.C.C. §§ 3–302 to 3–305) (Holders in Due Course).

On December 8, 1992, Solar Research filed its answer including a counterclaim against Alnor for negligently failing to confirm Katz's status as an authorized Solar Research officer. (Alnor Exhibit I, New Matter Cross–Claim and Counter–Claim). Subsequently, on December 16, 1992, Alnor filed a two count "Complaint in Joinder" (Third–Party Complaint) against the United States. Count one seeks indemnification from the United States in the event Solar Research

prevails on its counter claim against Alnor. Count two seeks direct reimbursement from the United States on the theory that the United States wrongfully dishonored a government check of which Alnor was the Holder in Due Course of a properly endorsed "pay to the order" commercial instrument.

The United States received service of Alnor's Third–Party Complaint on December 29, 1992, and on January 27, 1993, removed the case to federal court. 28 U.S.C. § 1441 (removal provision); 28 U.S.C. § 1346 (federal question jurisdiction where United States is a defendant). On February 2, 1993, the United States filed the present Motion to Dismiss and Solar Research responded on February 17, 1993.

## II. *DISCUSSION*

The United States has moved to dismiss both counts of Alnor's complaint under Fed. R.Civ.P. 12(b)(6). In support of its motion the government argues that the United States has not waived sovereign immunity to be sued over a commercial instrument. If this Court does have jurisdiction, the United States argues in the alternative that Alnor's endorsement of the treasury check constitutes a guarantee that any previous endorsements are valid under existing treasury regulations. 31 C.F.R. § 240 (Endorsement and Payment of Checks Drawn on the United States Treasury).

### A. *Whether the United States has Waived Sovereign Immunity*

The government's first argument is that this Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity to be sued. Fed. R.Civ.P. 12(b)(1). It is axiomatic that "the United States, as sovereign, is immune from suit" unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Balmaceda v. United States*, 815 F.Supp. 823, 825–26 (E.D.Pa.1992). Further, Congress can only waive the defense of sovereign immunity if it does so expressly by statute. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980).

■ Any party attempting to sue the United States bears the burden of proving that Congress has waived sovereign immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983) (per curiam). In the present case it is Alnor that bears the burden of proof. The United States alleges that Alnor has failed in its burden by failing to state any statute or legal theory in their Third Party Complaint that waives sovereign immunity. (Government's Brief at 4; *see also* Alnor's Third–Party Complaint at ¶¶ 5–20, citing only 13 Pa.Con.Stat. §§ 3302–05; U.C.C. §§ 3–302 to 3–305, state law provisions as basis for relief).

In response to the government's motion, however, Alnor argues that Congress has waived sovereign immunity under the Tucker Act (sometimes "Little Tucker Act"), 28 U.S.C. § 1346(a), which provides in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

§ 1346(a)(2). Case law interpreting this provision has held that § 1346(a) *both* provides subject matter jurisdiction and is a waiver of sovereign·immunity.

■ In *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.*, 903 F.2d 114, 119 (2d Cir.1990), the Second Circuit held:

The Tucker Act provides both subject matter jurisdiction and sovereign immunity for non-tort claims "against the United States ... founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any

express or implied contract with the United States."

*Id.* at 119.[1]

Similarly, in *National Bank of Fairhaven v. United States*, 660 F.Supp. 125, 127–28 (D.Mass.1987), the district court's discussion made clear that contract claims may be brought against the United States where there are allegations of wrongful government collection on Treasury checks. *Id.* at 128 (citing *State of Tennessee Ex Rel. Leech v. Dole*, 749 F.2d 331, 335 (6th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985)).

Accordingly, this Court now turns to the question of whether Alnor's endorsement of the treasury check, as outlined by Treasury Regulation 31 C.F.R. § 240, requires this Court to dismiss the third-party complaint against the United States.

**B. Dismissing Alnor's Claim Under Treasury Reg. 31 C.F.R. § 240**

■ When the United States issues commercial paper or any other negotiable instruments, federal law governs all subsequent transactions, regulations and disputes. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Francis H. Fox, *Forgery and Government Checks*, 27 Drake L.Rev. 458 (1977–78) (Alnor Exhibit B). In *Clearfield Trust* the Supreme Court held:

We agree with the [Third] Circuit Court of Appeals that the rule of *Erie Ry. Co. v. Tompkins*, 304 U.S. 64 [, 58 S.Ct. 817, 82 L.Ed. 1188] (1938), does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power.

318 U.S. at 366, 63 S.Ct. at 574. The *Clearfield* court then determined that when Congress issued a check under the Federal

---

1. Although the court stated that the Tucker Act provides *both* subject matter jurisdiction and sovereign immunity for non-tort claims, it is clear from the opinion and § 1346(a) that this contradiction was unintentional. The Tucker Act re-

tains sovereign immunity for "tort" related claims, not contract claims. § 1346(a)(2); *Sanders*, 903 F.2d at 118–19 (finding contract jurisdiction but only in Court of Claims).

Emergency Relief Act of 1935, 15 U.S.C. §§ 721–28 (1935), it did so under authority "which had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state." *Id.* Further, addressing the government's specific power to make payments the Court stated:

> The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain.

*Id.* at 367, 63 S.Ct. at 575.

■ *Clearfield Trust* is still the law of the land. *See e.g., Boyle v. United Technologies,* 487 U.S. 500, 508, 108 S.Ct. 2510, 2516, 101 L.Ed.2d 442 (1988) (discussing areas of protected federal common law); *United States v. Spears,* 859 F.2d 284 (3d Cir.1988) (FmHA contract not subject to state law); *Bank of America Nat'l Trust & Sav. Ass. v. United States,* 552 F.2d 302 (9th Cir.1977); *United States v. City Nat'l Bank & Trust Co.,* 491 F.2d 851 (8th Cir.1974). The inescapable application of *Clearfield* is that where a federal treasury note is involved, federal law preempts the Uniform Commercial Code, even where state law would otherwise directly regulate the financial transactions in question.

### 1. Alnor's Indemnification Claim Under 31 C.F.R. § 240.5

■ Alnor argues in its claim for indemnification or contribution that Katz's indorsement was unauthorized and that the United States Treasury is liable. The Treasury rules promulgated in Chapter 31 of the Code of Federal Regulations set forth a bank's responsibilities when handling federal commercial paper. *See* 31 C.F.R. § 240. Most significantly, § 240.5 provides:

> **Guaranty of indorsements.** The presenting bank and the indorsers of a check presented to the Treasury for payment are deemed to guarantee to the Treasury that all prior indorsements are genuine, whether or not an express guaranty is placed on the check. When the first indorsement has been made by one other than the payee personally, the presenting bank and the indorsers are deemed to guarantee the Treasury, in addition to other warranties, that the person who so indorsed had unqualified capacity and authority to indorse the check on behalf of the payee.

*Id.* Under § 240.5 any subsequent endorsers of a treasury check warrant that the initial endorsement was both valid and made under unqualified capacity of the signor.

Alnor's secondary endorsement guaranteed to PSFS, and ultimately the Treasury, that Katz's signature was valid and that he had the "unqualified capacity" to sign as an agent or officer of Solar Research. As such, the Treasury enjoys an absolute right of guarantee against PSFS that when PSFS deposited the check with the Federal Reserve Bank, the cashed check was properly redeemed by all previous endorsers. Therefore, under 31 C.F.R. § 240.5, Alnor cannot assert an indemnification claim against the Treasury on Check No. 3007–7994192 as a matter of law. *See* Fed.R.Civ.P. 12(b)(6).

### 2. The United States Wrongfully Debiting Alnor's Account

■ Alnor argues that the United States has improperly prevented Alnor from enforcing its check as a holder in due course under 13 Pa.Con.Stat. § 3302 (U.C.C. § 3–302). (Alnor's Third–Party Complaint at ¶¶ 17–20). However, the relevant Treasury regulations and Alnor's own exhibits indicate that the government has never prevented Alnor's rights as a holder in due course. Alnor's Exhibit G makes clear that it was PSFS that debited Alnor's account on September 24, 1992 as a state law "set-off" against PSFS having to pay the United States. *Id.*

■ This Court finds that Alnor cannot assert a claim against the United States where PSFS had a state law or contractual right to remedy its balance sheets against

Alnor. To hold otherwise would be to elevate state law commercial rights over the federal treasury regulations in violation of the Federal Supremacy Clause. U.S. Const. art. VI, cl. 2.

When the Treasury discovers that it has honored a check cashed under forgery or other fraudulent circumstances, it may recover the funds from the bank that presented the check to the Federal Reserve Bank. 31 C.F.R. § 240.6. Section 240.6 provides:

**Reclamation of amounts of paid checks.**

(a) If, after a check has been paid by Treasury, it is found to:

(1) Bear a forged or unauthorized indorsement; or

(2) Contain any other material defect or alteration which was not discovered upon first examination, then, upon demand by the Treasury in accordance with the procedures specified in § 240.7 of this part, the presenting bank or other indorser shall refund the amount of the check payment.

§ 240.6(a). *See also* § 240.6(d) (Secretary may recover costs and balance from *any* previous endorser). In this case, the Treasury acted within its regulatory power under § 240.6(a) and demanded repayment from PSFS. As the presenting bank PSFS acquiesced in the Treasury's request and refunded the $9,390.90, all in complete compliance with Federal Treasury Regulations.

**3. Elevating the U.C.C. over Clearfield Trust v. United States of America**

 In addition, Alnor argues that it is entitled to relief against the United States because the government wrongfully interfered with its rights as a holder in due course under Pennsylvania state commercial law. Alnor argues that the Uniform Commercial Code, and not *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), should govern Treasury checks in Pennsylvania. *See* Francis H. Fox, *Forgery and Government Checks*, 27 Drake L.Rev. 458 (1977–78) (urging Supreme Court to revisit *Clearfield Trust* and modify holding to comport with the U.C.C.).

This Court finds the reasoning in *United States v. City Nat'l Bank & Trust Co.*, 491

F.2d 851 (8th Cir.1974) persuasive and rejects Alnor's argument. In *City Nat'l Bank,* the court examined facts identical to the present dispute. In 1967, Fletcher Davis's widow forged Fletcher's signature and deposited over $16,000.00 worth of retired soldier disability checks issued to her deceased husband at Grand Avenue Bank. Grand Avenue subsequently endorsed the checks to City National Bank which in turn endorsed and presented the checks to the United States Treasury.

At the time these transactions took place, both Grand Avenue and City National Banks' endorsements were governed by Treasury Regulation 31 C.F.R. § 202.27(a) (1946) (precursor to present 31 C.F.R. § 240.5 (endorsement guarantee)). *City Nat'l Bank,* 491 F.2d at 853 n. 3. The government filed suit against City National Bank to recover the $16,413 that Mrs. Davis had fraudulently cashed over the previous six years. *Id.* at 852. The Eighth Circuit affirmed the district court's entry of judgment for the United States holding that the Treasury regulations controlled the outcome of the case. *Id.* at 853.

In reaching its decision the *City Nat'l Bank* court held that Federal Treasury regulations, and not the U.C.C., gave the United States the right to collect. *Id.* at 853. Most significantly, the *City Nat'l Bank* decision discussed the significance of forty-nine of the fifty states having adopted the U.C.C. In rejecting the *identical* argument that Alnor raises before this Court, the Eighth Circuit held:

We are not persuaded that the authority of *National Metro. Bank v. United States,* 323 U.S. 454 [65 S.Ct. 354, 89 L.Ed. 383] (1945), with respect to the problem here, has been eroded by the passage of time or the adoption of the U.C.C. by forty-nine states.

491 F.2d at 854. The court concluded:

We accept the general proposition that the federal government, in its commercial transactions, should be treated as other business entities, but we cannot extend such treatment here in the light of the Treasury regulations and the decision of

the Supreme Court. If a change is desired, Congress can enact a new statute, the Treasury regulations can be revised or the Supreme Court can overrule *National Metro. Bank.*

We affirm.

*Id.* (citations omitted). This Court concludes that it is Congress or the Treasury's responsibility to conform existing law to the Uniform Commercial Code, not the district court. Accordingly, because Alnor is attempting to assert a cause of action under 13 Pa.Con.Stat. § 3305 (U.C.C. § 3–305) that does not exist under federal common law or the Treasury Regulations, the United States's Motion to Dismiss is **GRANTED.**

### 4. Public Policy that is Consistent with the Treasury Department's Regulations

■ Finally, Alnor's policy argument is that a holding in favor of the United States will send a "clear public policy" message that the United States does not stand behind its Treasury checks and discourage check cashing businesses from honoring government checks. (Alnor Brief at 8, n. 11, citing *Some Check it Out, But Don't Bank On It,* Philadelphia Daily News, May 28, 1991, at 23; *Congressional Report by Thomas Folietta,* July 11, 1991).

■ To the contrary, this Court's holding reinforces the policy goals implicit in Treasury regulation 31 C.F.R. § 240 (1992) and Uniform Commercial Code Articles 3 and 4, that the party most capable of protecting the public from fraud by verifying the authenticity of an endorsement should bear the consequences for breaching that duty. *See United States v. City Nat'l Bank & Trust Co.,* 491 F.2d 851, 852 (8th Cir.1974); 31 C.F.R. § 240.6 (Treasury may collect from any bank that guarantees a previous endorsement). This Court's decision only reiterates that the United States will not be held accountable when financial institutions fail to properly authenticate or guarantee prior endorsements.

### III. *CONCLUSION*

The United State's Motion to Dismiss is **GRANTED.** As such, the removal of the United States as a defendant, there are no further federal statutes or questions before the Court. 28 U.S.C. § 1346(a) (United States as a defendant). Without a federal question, this Court lacks subject matter jurisdiction to resolve the remaining state law claims under Pennsylvania's Uniform Commercial Code, 13 Pa.Con.Stat. §§ 3302–05 (1992). 28 U.S.C. § 1331 (1982 & Supp. 1992). Therefore, this case is dismissed and shall be remanded to the Court of Common Pleas of Philadelphia County.

All outstanding motions, including defendant Jeff Katz's Motion for Leave to File an Amended Complaint and Alnor's Motion to Strike Defendant Solar Research's Counter-Claim, are denied, without prejudice, so that the parties may file any motions they deem appropriate upon remand to the Court of Common Pleas of Philadelphia County.

An appropriate Order follows.

### *FINAL JUDGMENT*

AND NOW, this 10th day of March, 1993, upon consideration of Third–Party Defendant United States of America's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) and Plaintiff Alnor Check Cashing Company's ("Alnor") response thereto, IT IS HEREBY ORDERED that the United States's Motion is **GRANTED.**

IT IS FURTHER ORDERED that:

(1) this case is **DISMISSED** and **REMANDED** to the Court of Common Pleas of Philadelphia County;

(2) Defendant Jeff Katz's Motion for Leave to File a Third Party Complaint is **DENIED** without prejudice; and

(3) Plaintiff Alnor Check Cashing's Motion to Strike Defendant Solar Research's Counter-Claim is **DENIED** without prejudice.

### *MEMORANDUM AND FINAL JUDGMENT ON RECONSIDERATION*

Presently before the Court is the plaintiff Alnor Check Cashing's ("Alnor") Motion for Reconsideration and to Vacate this Court's Memorandum and Order of March 10, 1993, the third-party defendant United States of

America's response, Alnor's reply and Motion for Oral Argument.

## I. BACKGROUND

The relevant facts and procedural developments are set forth in full in this Court's opinion dated March 10, 1993. This Court reaffirms its earlier opinion in its entirety, but issues this memorandum to discuss two arguments that Alnor now raises in its Motion for Reconsideration.[1]

## II. DISCUSSION

### A. Count I: Indemnification

 Alnor urges this Court to vacate its earlier Order dismissing count I on the basis that the Court misunderstood Alnor's original position. Alnor argues:

> Alnor now seeks reconsideration and reversal of this Court's prior Order based upon what Alnor perceives to be a misapprehension both by the Government and this Court as to the nature of Plaintiff's claim. For this reason, Plaintiff wishes to clarify its position. . . .
>
> . . .
>
> At the outset, *Plaintiff's indemnification Count is not based upon the premise that Katz' signature was uttered without authority.* To the contrary, it is based in common law *contract principles* of unjust enrichment.

(Alnor Memorandum at 2–3) (emphasis in original). In the March 10, 1993 opinion, this Court dismissed Alnor's claim against the United States because under Treasury Regulation 31 C.F.R. § 240.5, Alnor had guaranteed the authenticity of Jeff Katz's signature

to Mellon P.S.F.S. ("PSFS"), and ultimately the Treasury. *Alnor Check Cashing v. Katz*, No. 93–0424 (E.D.Pa. Mar. 10, 1993) at 8.[2] When this Court dismissed count I of Alnor's complaint, the Court assumed that Alnor was challenging Jeff Katz's authority to cash the check. *Id.* This assumption was not due to a lack of clarity or understanding on the part of the Court. As the following discussion indicates, if Alnor is proceeding on a theory that Jeff Katz had authority to cash the check, this Court lacks subject matter jurisdiction to entertain Alnor's claim under 28 U.S.C. § 1346(a). Fed.R.Civ.P. 12(b)(1).

Simply stated, Alnor only has two logical positions in this case: (1) Jeff Katz did not have the authority to cash the Solar Research Check; or (2) Jeff Katz did have the authority to cash the Solar Research Check. No matter which theory Alnor decides to proceed upon, this Court's earlier decision properly dismissed the United States as a party. *See* 28 U.S.C. § 1346.

If Jeff Katz did not have the authority to cash the Solar Research Check, then Alnor cannot assert a claim against the United States because Alnor guaranteed Katz's signature to the Treasury Department under 31 C.F.R. § 240.5. As this Court discussed in its March 10, 1993 opinion:

> § 240.5 **Guaranty of indorsements.** The presenting bank and the indorsers of a check presented to the Treasury for payment are deemed to guarantee to the Treasury that all prior indorsements are genuine, whether or not an express guaranty is placed on the check. When the first indorsement has been made by one

---

1. Alnor filed a two count complaint against Jeff Katz and Solar Research in the Court of Common Pleas of Philadelphia County on November 4, 1992, alleging that Jeff Katz had wrongfully cashed the Solar Research Check. After Solar Research answered the complaint, Alnor joined the United States as a third-party defendant on December 16, 1992. The government removed the case under 28 U.S.C. § 1346, and this Court dismissed the complaint against the United States and remanded it the Court of Common Pleas on March 10, 1993.

 Count I of Alnor's Third Party Complaint seeks indemnification from the United States in the event Solar Research prevails on its counter

claim against Alnor for negligently cashing a forged check. Count II seeks direct reimbursement from the United States on the theory that the United States wrongfully dishonored a government check of which Alnor was the Holder in Due Course of a properly endorsed "pay to the order" commercial instrument.

2. In that opinion, this Court applied the standard under Fed.R.Civ.P. 12(b)(6). *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (when considering a motion to dismiss, this Court shall take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff).

other than the payee personally, the presenting bank and the indorsers are deemed to guarantee the Treasury, in addition to other warranties, that the person who so indorsed had unqualified capacity and authority to indorse the check on behalf of the payee. *Id.*

.　.　.　.　.　.

Under § 240.5 any subsequent endorsers of a treasury check warrant that the initial endorsement was both valid and made under unqualified capacity of the signor.

*Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993) at 8. Alnor has presented no legal authority or alternative Treasury Regulation to the Court that warrants reversing the earlier decision that regulation 31 C.F.R. § 240.5 precludes Alnor's claim because Alnor has "guaranteed" the authenticity of Katz's signature. As such, the Treasury Regulations preclude any challenge by Alnor that Jeff Katz did not have the authority to cash the Solar Research check.

Apparently conceding this point, Alnor now argues in its present motion that this Court "misinterpreted" Alnor's original position and that Jeff Katz's actually *did* have authority to cash the Solar Research Check. (Alnor Memorandum at 2–3). The government responds that Alnor cannot assert this position because Alnor's indemnification claim exists only if Solar Research prevails against Alnor for *wrongfully* cashing an unauthorized check. In other words, Alnor is judicially estopped from seeking indemnification for wrongfully cashing a check if its theory of liability is that Jeff Katz *actually* had the authority to cash the Solar Research Check.

■■ It is well settled law that a district court lacks jurisdiction under the Tucker Act (or "Little Tucker Act"), 28 U.S.C. § 1346 to entertain claims against the United States based upon principles of "quasi" or "implied-in-law" contracts. *Army and Air Force Ex-*

*change Serv. v. Sheehan,* 456 U.S. 728, 738, 102 S.Ct. 2118, 2124, 72 L.Ed.2d 520 (1982); *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980); *GAF Corp. v. United States,* 932 F.2d 947 (Fed.Cir.1991); *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1493 (D.C.Cir.1984) (refusing to adopt 1 Corbin on Contracts, § 95, at 407–08 (1963 & Supp.1984) (quasi contractual relief)); *Kunkler v. Fort Lauderdale Hous. Auth.,* 764 F.Supp. 171 (S.D.Fla.1991).

■■ In *Army and Air Force Exchange Serv. v. Sheehan,* 456 U.S. 728, 738, 102 S.Ct. 2118, 2124, 72 L.Ed.2d 520 (1982), the United States Supreme Court stated:

Claims grounded on implied-in-fact contracts may be brought under the Tucker Act, but the Act does not confer jurisdiction with respect to contracts implied in law.

*Id.* at 738 n. 10, 102 S.Ct. at 2124 n. 10 (citing *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980)). Adopting the Supreme Court's reasoning, the United States Court of Appeals for the District of Columbia has held that the district courts lack subject matter jurisdiction to hear claims for quasi-contractual or implied-in-law contracts. *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1493 (D.C.Cir.1984) (refusing to adopt 1 Corbin on Contracts, § 95, at 407–08 (1963 & Supp.1984) (quasi contractual relief)). Recently, the Federal Circuit held:

The Claims Court may not do by judicial fiat what Congress has not done by legislation. The trial court may not enforce a warranty implied in law. The Tucker Act does not grant the Claims Court jurisdiction to enforce contracts implied-in-law.

*GAF Corp. v. United States,* 932 F.2d 947, 951 (Fed.Cir.1991) (citing *Hatzlachh Supply Co.,* 444 U.S. at 465 n. 5, 100 S.Ct. at 650 n. 5).[3]

---

3. Under the Tucker Act, 28 U.S.C. § 1346, the Claims Court has exclusive jurisdiction over all claims against the government in which the amount in controversy exceeds $10,000. Accordingly, to the extent that the Court of Claims lacks jurisdiction to hear a quasi-contractual dispute for an amount in excess of $10,000, so too does the district court lack jurisdiction to reach similar claims where the amount in controversy is below $10,000. *GAF,* 932 F.2d at 951.

Count I of Alnor's suit against the United States for unjust enrichment *is* an implied-in-law contract claim. (See Alnor's Memorandum at 2) ("Plaintiff's claim based on common law principles of unjust enrichment"); *see also* Corbin on Contracts, Ch. 1, § 19 (quasi-contract defined). Accordingly, this Court lacks jurisdiction to entertain Alnor's indemnification claim against the United States on the theory that Jeff Katz *did* have the authority to cash the Solar Research Check. 28 U.S.C. § 1346(a); *Army and Air Force Exchange Serv. v. Sheehan,* 456 U.S. at 738, 102 S.Ct. at 2124; *Weisberg,* 745 F.2d at 1494.[4]

In summary, Alnor's argument that Katz lacked authority is barred by Treasury Regulation 31 C.F.R. § 240.5. *Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993). Conversely, if Alnor seeks "quasi-contractual relief" for common law "unjust enrichment," because Jeff Katz had the authority to endorse the check, this Court lacks subject matter jurisdiction to consider this claim. *See Army and Air Force Exchange Serv. v. Sheehan,* 456 U.S. 728, 738, 102 S.Ct. 2118, 2124, 72 L.Ed.2d 520 (1982); Fed. R.Civ.P. 12(b)(1). Therefore, Alnor's Motion for Reconsideration and to Vacate this Court's Order Dismissing Count I is **DENIED.**

## B. *Count II: Interference with a Pay to the Order Instrument*

 Count II of Alnor's complaint seeks direct relief against the United States on the theory that the United States has interfered with Alnor's rights as a holder in due course under 13 Pa.Con.Stat. § 3302. Alnor's complaint against the United States alleges:

17. Plaintiff cashed said check for the payee in good faith and without notice of any claims or defenses against said check.

18. Plaintiff in cashing said check was a holder in due course under Section 3–302 of the U.C.C. and entitled to enforce the same under Section 3–305 of the U.C.C.

19. The Department of Treasury returned the same to the Plaintiff payment stopped together with a claim that Katz lacked the authority to negotiate the check and/or forged Solar Corp.'s name.

20. Defendants, Solar Corp. and Katz, despite their obligations as payee of said check, have each refused to pay all or any part thereof.

(Alnor Third–Party Complaint at ¶¶ 17–20). With the exception of paragraph 18, which refers to Alnor's rights under 13 Pa.Con.Stat. § 3305, the complaint does not set forth the specific relief Alnor seeks from the United States. In its Motion for Reconsideration of this Court's dismissal of Count II, Alnor expands on its complaint and asserts its position as:

The fact is that Plaintiff's theory of liability against the Government is that the Government as a maker of a negotiable instrument, like any other maker of a "pay to the order" instrument, engaged in a *contract to pay that instrument* to the properly titled owner.

(Alnor Memorandum at 9) (emphasis in original). This Court reviewed Alnor's argument that the Treasury has interfered with its rights as a holder in due course in its March 10, 1993 opinion:

Alnor argues that the United States has improperly prevented Alnor from enforcing its check as a holder in due course under 13 Pa.Con.Stat. § 3302 (U.C.C. § 3–302). (Alnor's Third–Party Complaint at ¶¶ 17–20). However, the relevant Treasury regulations and Alnor's own exhibits indicate that the government has never prevented Alnor's rights as a holder in due

---

4. Alnor argues in its brief that the Tucker Act allows for "quasi-contractual" claims:

Plainly common law *unjust enrichment* claims are plainly within the jurisdiction of the Court under the Tucker Act. 28 U.S.C. Section 1346(a).

(Alnor Memorandum at 4) (no authority cited). "As a contract action for unjust enrichment, such

a claim is expressly permitted under the Tucker Act." (Alnor Memorandum at 6). However, this Court's research has not discovered even a *single* case where a Court has found jurisdiction for an implied-in-law or quasi-contractual claim under § 1346(a).

course. Alnor's Exhibit G makes clear that it was PSFS that debited Alnor's account on September 24, 1992 as a state law "set-off" against PSFS having to pay the United States.

*Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993) at 9. This Court reaffirms its earlier decision that Alnor has no direct cause of action against the United States. Simply put, Alnor's argument is incorrectly premised upon its conclusion that the United States is "like any other maker of a 'pay to the order' instrument." (Alnor Memorandum at 9).

### 1. Federal Common Law, and Federal Regulations Govern this Case, Not the Uniform Commercial Code

■■■■ This Court has already discussed in full how *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) requires that federal common law controls the outcome of this case. As Professor Brady stated in his hornbook on bank checks and commercial paper:

> In particular, "federal common law" has been applied in cases involving the rights or liability of the federal government on one of its own checks. This has been true since enactment generally of the UCC in the states.

Henrey J. Bailey, *Brady on Bank Checks, The Law of Bank Checks* § 1.3 at 1–4 to 1–6 (6th ed. 1979 & Supp.1990). To the extent that the Treasury's rights pre-empt Alnor's rights under Pennsylvania's UCC § 3302, the Constitution's Supremacy Clause requires that the treasury regulations prevail.

The Treasury did not interfere with Alnor's rights when it properly reclaimed the Solar Research Check from PSFS pursuant to its authority under Treasury Regulation 31 C.F.R. § 240.6. Alnor argues that the Treasury's reclamation action has nothing to do with the present case:

> Plaintiff's claim which is plainly intended to enforce the Government's contractual promise to pay the check to a proper endorsee according to its original tenor, and which *has nothing to do with reclamation liability.*

Merely because the check was reclaimed by P.S.F.S., does not negate the fact that Plaintiff claims to be a holder under *federal contract common law.* So long as Plaintiff is titled to hold the Treasury check, the Government's contractual obligations to pay the check "to the order of" the payee's endorser, remain valid.

(Alnor Memorandum at 9) (no authority cited). This Court disagrees. First, the Treasury's right to implement a reclamation action is directly an issue in this case because it is the reason that the Solar Research Check no longer has any value. And, second, Alnor is not a properly titled holder of valid government commercial paper.

### 2. The Treasury's Reclamation Action

■■■■ As this Court discussed in its original opinion, Treasury Regulation 31 C.F.R. § 240.6 provides:

**Reclamation of amounts of paid checks.**

(a) If, after a check has been paid by Treasury, it is found to:

(1) Bear a forged or unauthorized indorsement; or

(2) Contain any other material defect or alteration which was not discovered upon first examination, then, upon demand by the Treasury in accordance with the procedures specified in § 240.7 of this part, the presenting bank or other indorser shall refund the amount of the check payment.

*Id.* This Court has determined that the Treasury was acting within the regulatory scheme when it demanded repayment from PSFS. *Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993) at 10. Under the Constitution's Supremacy Clause, the Treasury must be able to implement reclamation actions, under 31 C.F.R. § 240.6, without potential liability under state law UCC provision, 13 Pa.Con.Stat. § 3302. Contrary, to Alnor's position, the Treasury's reclamation action is directly relevant to Alnor's status as a holder in due course.

■■■■ Unlike any other private commercial lender, the United States Treasury operates under its own specific regulations for the issuance and negotiability of federal commercial paper. ·*See* 31 C.F.R. Part 240. This Court's prior discussion of *Clearfield Trust*

*Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) was intended to underscore the difference between federal negotiable instruments and those governed exclusively by the UCC. *Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993) at 6.

Further, PSFS, not the United States, debited Alnor's account. The United States's decision to reclaim the Solar Research Check did not affect Alnor until PSFS sent Alnor the September 28, 1992 debit notice.

In *Powderly v. Schweiker, Sec. of Health and Human Services,* 704 F.2d 1092 (9th Cir.1983) (Fletcher, J., concurring), Judge Fletcher stated that Sea–First Bank's efforts to collect fraudulently cashed social security check's from the payee's widow were properly within the Treasury regulations.

> It was not the government that debited Powderly's account. It was the bank.
>
> . . . . .
>
> The federal government itself neither debited nor directed the bank to debit her account. The Treasury determined only that, pursuant to 31 C.F.R. § 240.5(a) (1982), Sea–First was liable to the Treasury for return of the amount paid by the Treasury to the bank on a check bearing an unauthorized endorsement. The Treasury made no determination as to who ultimately received the funds from the Treasury nor did it direct the bank to recover any funds from appellant.

*Id.* at 1099 (Fletcher, J., concurring). On the issue of whether the court should attribute the bank's conduct to the government, Judge Fletcher determined:

> Nor can the actions of Sea–First … be imputed to the federal government on some theory of agency. Sea–First's ability to debit appellant's account in the amount of the forged check derives not from some delegation of federal authority to the bank by the Treasury but from appellant's own depository contract with the bank and the self-help remedies authorized by Washington state law. . . .

*Id.* This Court will not re-categorize PSFS's right to "set-off" its obligation to the Treasury as an interference claim by the United States. While Alnor may have a state law claim against PSFS, it does not have a federal cause of action against the United States. *Id.*

### 3. *Alnor is Not a Properly Endorsed Party Under Federal Law*

▪ Alnor asserts:

> So long as Plaintiff is titled to hold the Treasury check, the Government's contractual obligations to pay the check "to the order of" the payee's endorser, remain valid.

(Alnor Memorandum at 9) (no authority cited). Alnor claims that it is a "holder in due course" under Pennsylvania law because it can prove the following:

> **(a) General Rule.**—A holder in due course is a holder who takes the instrument:
>
> (1) for value;
>
> (2) in good faith;
>
> (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

13 Pa.Con.Stat. § 3302(a); *See* Alnor Complaint at ¶ 18.

Again, Alnor's argument misinterprets the significance of the UCC when there are conflicting Treasury Regulations on point. Alnor's failure to comply with Treasury Regulation 31 C.F.R. § 240.11 (1993) precludes Alnor from bringing any claim against the United States based on these facts. Regulation § 240.11 provides in relevant part:

> The indorsement by a person who purports to indorse for the named payee(s) with an indorsement consisting of the name(s) of the payee(s), whether as purported signature(s) or otherwise, and the indorsing person's signature and no indication of the indorsing person's representative capacity, will create a rebuttable presumption that the indorsing person was not authorized to indorse for the named payee(s). *In these circumstances it is the responsibility of the individual or institution accepting a check from a person other than the named payee(s) to determine that such person is authorized and has the capacity to indorse and negotiate the check.*

§ 240.11 (emphasis added). When Jeff Katz took the Solar Research check to Alnor, he endorsed the check "Solar Research Inc." (Government's Exhibit A, photocopy of endorsement). Katz did not sign his name nor designate his title or position. Alnor then accepted the check without any further investigation. Alnor's failure to investigate Katz's authority violated 31 C.F.R. § 240.11 whether or not Alnor would have had a duty to investigate Katz's authority under UCC § 3–302.

■ As § 240.11 of the Treasury Regulations indicates, it was Alnor's "responsibility to determine" that Jeff Katz had the proper authority to cash the Solar Research check. *Id.* Alnor's failure to confirm Katz's status cannot now be converted into a claim against the United States. 31 C.F.R. § 240.5; *see also Alnor Check Cashing v. Katz,* No. 93–0424 (E.D.Pa. Mar. 10, 1993).[5]

## C. *Hearing on the Merits*

Finally, because Alnor cannot prevail on its indemnification theory (Count I) nor its holder in due course claim (Count II), as a matter of law, the Court does not need a hearing to further clarify which position Alnor now seeks to advance. (See Alnor Memorandum in Support of Oral Argument at 2–3) (Court "misunderstood" Alnor's position). Accordingly, Alnor's Motion for a Hearing is **DENIED.**

An appropriate Order follows.

### *FINAL JUDGMENT*

AND NOW, this 22nd day of April, 1993, upon consideration of the Plaintiff Alnor Check Cashing's Motion for Reconsideration and to Vacate this Court's Memorandum and Order of March 10, 1993, the Third–Party

Defendant United States of America's response, Alnor's reply and Motion for Oral Argument, IT IS HEREBY ORDERED that Alnor's Motion for Reconsideration and to Vacate this Court's Memorandum and Order of March 10, 1993 is **DENIED.**

---

**5.** This Court's research indicates that Alnor would not qualify as a holder in due course under 13 Pa.Con.Stat. § 3302. A holder in due course must first be a "holder". *Id.* In their treatise on Commercial Paper, professors Weber and Speidel provide the following example of when a party is *not* a holder in due course:

P has an instrument which names him as payee. T steals the instrument from P, indorses it in blank, and then delivers it to B. Result: Neither T nor B were holders. An order instrument can be negotiated only after it has been indorsed by an *appropriate* party. See 3–302(2). Since P, the payee had not indorsed, no later party could become a holder. Notice also that since T was not the appropriate party to indorse, his indorsement could not affect the character of the paper.

Charles M. Weber and Richard E. Speidel, *Commercial Paper in a Nutshell* Ch. 6, example 18 at 105 (1982). Following example 18, when Katz negotiated Solar Research's check he violated the endorsement requirement of 31 C.F.R. § 240.11 and was therefore not the "appropriate party." *Id.*